THE UNITED STATES, PLAINTIFFS IN ERROR V. THOMAS FILLEBROWN, JUN.

The United States instituted an action to recover a balance, certified at the treasury, against the defendant on the settlement of his accounts as secretary to the commissioners of the navy hospital fund. Upon this settlement, the defendant set up a claim for compensation, for what he considered extra services, in bringing up and arranging the records of the board, antecedent to his appointment as secretary; and also for commissions on the disbursement of moneys under the orders of the board. These claims were rejected by the accounting officers of the treasury, and were on the trial set up by way of set-off against the demand on the part of the United States. Held: that the allowance of compensation by a fixed salary to the defendant, as the secretary of the board of the navy hospital commissioners, did not exclude his right to claim extra compensation for the disbursement of moneys belonging to the navy hospital fund.

Held: that it was not necessary to entitle the defendant to such compensation, that the board of commissioners should have passed a resolution for the payment of such commissions, and that the claim of commissions should have been sanctioned and settled by the board, in order to enable the defendant to set up a claim against the United States.

The authority of the commissioners to appoint a secretary was not denied; and this same authority must necessarily exist, to appoint agents and superintendents for the management of the business connected with the employment of the fund; and which, in the absence of any regulation by law on the subject, must carry with it a right to determine the compensation to be allowed them.

From the testimony in the case, it is very certain that the secretary of the navy considered the agency of the defendant in relation to the fund as entirely distinct from his duty as secretary, and for which he was to have extra compensation. And it is fairly to be collected from his deposition that all this received the direct sanction of all the commissioners. But whether it did or not, it was binding on the board; for the secretary of the navy was the acting commissioner, having the authority of the board for doing what he did, and his acts were the acts of the board, in judgment of law. It was therefore an express contract entered into between the board or its agent, and the defendant; and it was not in the power of the board, composed even of the same men, after the service had been performed, to rescind the contract, and withhold from the defendant the stipulated compensation. There is no doubt, the board, composed of other members, had the same power over this matter as the former board; but it cannot be admitted that it had any greater power.

[United States v. Fillebrown.]

The rejection therefore of these claims, on the 7th of September 1829, after all the services had been performed by the defendant, can have no influence upon the question.

There is no general principle of law known to the court, and no authority has been shown establishing the doctrine that all the proceedings of such boards must be in writing, or that they shall be deemed void ; unless the statute under which they act shall require their proceedings to be reduced to writing. It is certainly fit and proper that every important transaction of the board should be committed to writing ; but the law imposes no such indispensable duty. The act of 1811, 4 Laws U. S. 311, constituting the fund for navy hospitals, only makes the secretaries of the navy, treasury and war departments, a board of commissioners, by the name and style of commissioners of navy hospitals, and gives some general directions in what way the fund is to be employed: but the mode and manner of transacting their business is not in any way prescribed.

It is not true even with respect to corporations, that all their acts must be established by positive record evidence. In the case of the Bank of the United States v. Dandridge, 12 Wheat. 69, this court say, "we do not admit as a general proposition, that the acts of a corporation are invalid merely from an omission to have them reduced to writing, unless the statute creating it, makes such writing indispensable as evidence, or to give them an obligatory force. If the statute imposes such restriction, it must be obeyed. If the board had authority to employ the defendant to perform the services which he has rendered, and these services have been actually rendered at the request of the board, the law implies a promise to pay for the same. This principle is fully established in the case of the United States v. Wilkins, 6 Wheat. 143 : which brought under the consideration of the court, the act of the 3d of March 1797, 2 Laws U. S. 594, providing for the settlement of accounts between the United States and public receivers.

The instructions given to the jury by the circuit court were : if the jury believe from the evidence, that the regular duties to be performed by the defendant, as secretary to the commissioners of the navy hospital fund, at the stated salary of two hundred and fifty dollars per annum, did not extend to the receipt and disbursement of the fund : that the duty of receiving and disbursing the fund was required of and performed by him, as an extra service, over and above the regular duties of his said appointment: that it has been for many years the general practice of the government and its several departments to allow to persons, though holding offices or clerkships, for the proper duties of which they receive stated salaries or other fixed compensation, commissions, over and above such salaries or other compensation, upon the receipts and disbursements of public moneys, appropriated by law for particular services, when such receipts and disbursements were not among the ordinary and regular duties appertaining to such offices or clerkships, but superadded labour and responsibility, apart from such ordinary and regular duties : and that the defendant took upon himself the labour and responsibility of such re-

[United States v. Fillebrown.]

ceipts and expenditures of the navy hospital fund, at the request of said commissioners, or with an understanding on both sides, that he should be compensated for the same, as extra service, by the allowance of a commission on the amount of such receipts and expenditures: then it is competent for the jury in this case, to allow such commission to the defendant, on the said receipts and disbursements, as the jury may find to have been agreed upon between the said commissioners and the defendant: or, in the absence of any specific agreement, fixing the rate of commissions at such rate as the jury shall find to be reasonable and conformable to the general usage of the government, and its departments; in the like cases. These instructions were entirely correct, and in conformity to the rules and principles of the law on this subject.

Upon the trial of this cause, the defendant offered to prove, by parol testimony, the general usage of the different departments of the government, in allowing commissions to the officers of government upon disbursements of money under a special authority not connected with their regular official duties. The counsel of the United States objected to the admission of parol evidence to prove such usage, but the court permitted the evidence to be given. By the court: we see no grounds for objection against the usage offered to be proved, and the purpose for which it was so offered, as connected with the very terms upon which the defendant was employed to perform the services. It was not for the purpose of establishing the right, but to show the measure of compensation, and the manner in which it was to be paid.

IN error to the circuit court of the United States for the district of Columbia, holden in and for the county of Washington.

The United States, on the 23d day of May 1829, instituted a suit in the circuit court of the district of Columbia, for the recovery of the sum of two thousand and seven dollars and eighty-four cents, to which amount the declaration alleged the defendant in error, Thomas Fillebrown, Jun., to be indebted to the United States, "for sundry matters and articles properly chargeable in account, as stated in a particular account, &c." The declaration also contained the common counts of goods sold and delivered, money laid out and expended, money had and received, and an account stated and settled, &c. The defendant pleaded non assumpsit, &c.

The cause was tried by a jury at May term 1830, and a verdict was given in favour of the United States, for one thousand nine hundred and thirty-seven dollars and seventy cents; which verdict was, on the motion of the counsel for the defendant, set aside, and a new trial ordered.

[United States v. Fillebrown.]

On the first Monday of May 1831, the cause was again tried by a jury, and the following verdict was rendered in favour of the defendant, upon which the court entered judgment.

"And the jurors aforesaid, at the time of bringing in their verdict aforesaid, filed in court here the following certificate, to wit: 'The jurors empannelled in the case of the United States v. Thomas Fillebrown, Jun., find, upon examining the accounts filed, that the United States are indebted to the said Fillebrown in the sum of four hundred and thirty dollars.

"'Witness our hands, this 26th day of May 1831.'"

From this judgment the United States prosecuted a writ of error.

On the trial of the case, the deposition of Samuel L. Southard, Esq., late secretary of the navy of the United States, was read in evidence on the part of the defendant.

In the testimony of Mr Southard it was stated, that from the year 1825 to March 1829, he, Mr Southard, was secretary of the navy, and one of the commissioners of "the navy hospital fund." The situation of this fund was such as to require constant and earnest attention. Thomas Fillebrown, Jun., the defendant, was, by the board, appointed its secretary for the discharge of those duties, and his salary was fixed at two hundred and fifty dollars per annum.

Mr Southard was, by the direction of the board, and by previous practice and usage, acting commissioner of the fund, and attended to all matters connected with it, except in cases of new arrangements; the expenditure of money on a new object; or the settlement of a new principle: when the whole board was consulted, and his acts authorized or sanctioned by it. Mr Fillebrown's appointment had the direct and express sanction of the board; and it was understood that he was to discharge his duties at such times, and in such manner, as not to interfere with his duties as a clerk in the navy department; which situation he held at the time of his appointment, and continued to hold.

His appointment was in October or November 1825, but the records of the fund do not show the whole amount of labour which he had to perform; his duties were often both troublesome and laborious.

Some time after his appointment, it was considered proper to procure necessary books, and to make retrospective examinations into records and accounts in certain public offices, and to do whatever should be required to put the fund in a proper condition. This was regularly the duty of the secretary of the fund; but as it related to a period anterior to his appointment, for which he could not receive a compensation in his salary as secretary, it was thought proper to allow him a salary for such period previous to his actual appointment, as would be proportionate to the additional labour actually performed by him; and such allowance was made about May 1826, and had the approbation of the board. The allowance was regarded in the light of extra service, and was given in this form to show the character of the service rendered by the defendant in error. Subsequent to the appointment of the defendant, the navy hospital fund became sufficient for the purchase of sites for hospitals, and to commence the erection of buildings. The money collected was placed in the hands of the treasurer of the United States, as the treasurer of the fund; and a special agent who should attend carefully to collecting and disbursing it was found indispensable. This did not belong to the duties of the secretary of the board; but it was thought best to give the agency to him on account of his knowledge of the interests connected with the fund, and his fitness for it.

The manner and the forms of transacting the business were arranged with the defendant by Mr Southard, as the acting commissioner; the responsibility attending the payment and transmission of money was imposed upon the defendant: and at all times he acted uprightly, diligently and skilfully in every thing relating to the subject.

In so doing, it was the understanding of the commissioners that he should receive compensation in the mode and according to the practice of the government in other and similar cases: but Mr Southard said he did not distinctly recollect whether it was to be by a specific sum, or by a per centage on the money disbursed, but was under the impression that it was the latter, that being the usual mode in such cases.

He was under the impression that he did, by the authority of the board, allow one or more of the accounts presented by

[United States v. Fillebrown.]

Mr Fillebrown, in conformity with the facts and principles stated; and that such approval and allowance will be found on file in the office of the secretary of the fund.   He very well recollected, that about the 1st of March 1829, Mr Fillebrown called on him with his accounts, desiring their adjustment and allowance; he was then very sick and not able to examine them, or consult the other commissioners; he therefore dictated to an amanuensis, a letter to Mr Fillebrown, expressing his views and opinions respecting his claims, which letter is probably dated on the 2d of March 1829, and now on file among the papers of the fund; he then believed, and still believes, that Mr Fillebrown was entitled to a just compensation for the performance of the duties before mentioned.

The appointment of Mr Fillebrown as secretary of the commissioners of naval hospitals, was entered on the minutes of the board at a meeting of the commissioners of naval hospitals, in the city of Washington, on the 7th day of November 1825.

"Present, Hon. Samuel L. Southard, secretary of the navy; Hon. Richard Rush, secretary of the treasury; Hon. James Barbour, secretary of war.

"It was resolved, that a secretary be appointed to this board, to take charge of the books, papers, &c. belonging to the hospital fund; and to execute such duties relative thereto, as may be required of him by the board; for which services he shall be allowed the sum of two hundred and fifty dollars per annum.

"Resolved, that Mr Thomas Fillebrown, Jun. be appointed secretary.

"And then the board adjourned."

Of this appointment he was informed on the same day.

"NAVY DEPARTMENT, 7th November 1825.

"Mr THOMAS FILLEBROWN, Jun., Present:

"Sir:—You are hereby appointed secretary to the board of commissioners of the naval hospital fund.   The duties appertaining to this appointment you will commence forthwith. Your compensation will be two hundred and fifty dollars per annum.

"I am, respectfully, &c.

"SAMUEL L. SOUTHARD."

The retrospective duties referred to in the deposition of Mr

Southard, were authorized, and a compensation for the same allowed by the following letter:

"NAVY DEPARTMENT, 22d *May* 1822.

"Mr THOMAS FILLEBROWN, Present:

"Sir:—In consideration of the duties performed by you since your appointment as secretary to the commissioners of navy hospitals, you may consider your appointment as ante-dated six months, and draw a warrant for your salary for that period.

"I am, respectfully, &c.

"SAMUEL L. SOUTHARD."

The following letter was also read in evidence.

"NAVY DEPARTMENT, 2d *March* 1829.

"Sir:—It was my intention before I left the department, to have submitted to the consideration of the other commissioners of the navy hospital fund, your claim and account for compensation for attending to the disbursement of the moneys of the fund, which have passed through your hands since your appointment as secretary. I consider the claim perfectly just, and do not doubt but a fit compensation would have been made, could the question have been submitted to the board. Neither the responsibility nor the labour is embraced within your duties as secretary, and if any other person had been appointed to perform them, an allowance must necessarily have been made to him.

"I do not doubt when the commissioners shall understand the merits of the claim, that no hesitation will be felt on the subject.

"Nothing but my severe and protracted indisposition during the whole winter, has heretofore prevented its adjustment.

"I am, respectfully, &c.

"SAMUEL L. SOUTHARD.

"THOMAS FILLEBROWN, Esq.

"*Sec. Nav. Hos. Fund, Washington.*"

Other evidence was introduced for the purpose of showing that the allowances of commissions had been made by the government to others, upon similar principles with those on which the defendant rested his claims.

This evidence was furnished by accounts settled at the office of the third auditor of the treasury, with officers of the army

of the United States, employed in the years 1822, 1823, 1824 and 1825, in which allowances of commissions, &c. were made, and compensation paid for extra services. Twenty-seven accounts were exhibited containing these allowances. Part of the testimony was extracted from a report of the fourth auditor made to the house of representatives at the second session of the nineteenth congress. H. R. Documents, 41.

Parol evidence of a usage in the public departments to admit and pay such charges by the officers and agents of the government, was also given. The accounts of the defendant, as settled by the accounting officers of the treasury, were also given in evidence.

The plaintiffs in error took two bills of exceptions to the decisions of the circuit court on the trial of the cause.

The first bill of exceptions, after setting forth the evidence given on the trial, states,

"Upon the evidence so given, the counsel for the United States prayed the court to instruct the jury—

"That if, from the evidence aforesaid, it should appear to them that the defendant had accepted the appointment of secretary of the board of navy hospital commissioners, upon the terms mentioned in the said appointment, and in the said letter of S. L. Southard to him, of the 7th of November 1825, as herein before stated; that in that case, he was not entitled to any extra compensation for the disbursement of the moneys belonging to the said navy hospital fund; and that he was only entitled to two hundred and fifty dollars a year, for the whole of the services performed by him for the said board.

"And the said plaintiffs prayed the court further to instruct the jury—

"That, if they should be satisfied by the evidence aforesaid, that the said board of navy commissioners had never passed any order or resolution for the payment of any commission upon the moneys disbursed by the defendant for the said board, and that the claim for commissions, which he now makes, had never been sanctioned or settled by the said board; that it is not competent for him now to set up the said claim for commissions against the claim of the United States, for which this suit is brought.

"Which instructions the court refused : and thereupon, at the instance of the defendant, instructed the jury as follows :

"If the jury believe, from the evidence, that the regular duties to be performed by the defendant, as secretary to the commissioners of the navy hospital fund, at the stated salary of two hundred and fifty dollars per annum, did not extend to the receipt and disbursement of the fund ; that the duty of receiving and disbursing the fund was required of and performed by him, as an extra service over and above the regular duties of his said appointment ; that it has been for many years the general practice of the government and its several departments, to allow to persons, though holding offices or clerkships, for the proper duties of which they received stated salaries or other fixed compensation, commissions over and above such salaries or other compensation, upon the receipts and disbursements of public moneys, appropriated by law for particular services, when such receipts and disbursements were not among the ordinary and regular duties appertaining to such offices or clerkships, but superadded labour and responsibility apart from such ordinary and regular duties ; and that defendant took upon himself the labour and responsibility of such receipts and expenditures of the navy hospital fund, at the request of said commissioners, either under an agreement, or with an understanding on both sides, that he should be compensated for the same, as extra service, by the allowance of a commission on the amount of such receipts and disbursements ; then it is competent for the jury, in this case, to allow such commissions to the defendant, on the said receipts and disbursements, as the jury may find to have been agreed upon between the said commissioners and defendant ; or, in the absence of any specific agreement fixing the rate of such commissions, such rate as the jury shall find to be reasonable, and conformable to the general usage of the government and its departments in the like cases.

"To which refusal of the court to give the instructions moved by the plaintiffs, and to the said instructions given at the instance of the defendant, plaintiffs except."

The second bill of exceptions was as follows :

"Upon the trial of this cause, the defendant offered to prove,

by the testimony contained in the preceding bill of exceptions, the general usage of the different departments of the government, in allowing commissions to the officers of government upon disbursements of money under a special authority not connected with their regular official duties. The counsel of the United States objected to the admission of parol evidence to prove such usage. But the court permitted the evidence to be given, and the same was given accordingly. To which opinion and admission of the court, the plaintiffs by their counsel except, and this their bill of exceptions is signed, sealed, and ordered to be enrolled this 26th of May 1831."

The case was argued by Mr Taney, attorney-general, for the United States; and by Mr Coxe and Mr Jones, for the defendant.

For the United States it was contended:

1. That the defendant is not entitled to an allowance for salary as secretary for the time claimed in his account anterior to his appointment in November 7, 1825.

2. That he was not entitled to a credit for the commissions on disbursements mentioned in the exceptions.

3. That the usage and practice of the officers of the executive departments of the government to make such allowances, is not admissible in evidence for the purpose of proving their legal right to make them in this case.

The attorney-general referred to the acts of congress of March 2, 1799, 3 Laws U. S. 266, and of 26th of February 1811, 4 Laws U. S. 338, relative to the navy hospital fund, and the appointment of the commissioners of the same.

The evidence in the case contains the letter of Mr Southard relative to the appointment of the defendant as secretary to the board of commissioners of the navy hospital fund. The appointment was made on the 7th November 1825, and the compensation fixed at two hundred and fifty dollars per annum; and on the 22d May 1826 Mr Southard agreed to ante-date his salary six months.

On the 27th September 1829, J. H. Eaton, the secretary of war, and John Branch, the secretary of the navy, acting as a

board of commissioners of the navy hospital fund, made the following order, which was filed in the office of the fourth auditor of the treasury:

"Mr Fillebrown, it appears, was appointed secretary in November 7, 1825. He can be entitled to pay, as such, only from the date of his appointment. The allowance of one per cent on the moneys disbursed, cannot be allowed, unless authorized by some existing law; none such is known to the commissioners; of course they cannot have authority to admit it.

"J. H. EATON.
"JOHN BRANCH.

"*September* 7, 1829."

The duties of the secretary of the board were not defined: they were, to do whatever the board should require from him. But it is not contended that the defendant's receiving a salary will preclude his receiving extra compensation for extra services. The question must turn upon the inquiry whether disbursements of the hospital fund were extra services?

From the nature of the services, they were necessarily a part of the duties of the secretary of the board; and the practice of allowing commissions on the payment of money under similar circumstances is not proved by the testimony to have been uniform or frequent.

The allowance for extra salary before the appointment of the defendant, could not be made by the secretary of the navy alone. It required the approbation of the board. The defendant had, therefore, no legal right to this allowance; and it should have been refused by the jury, under proper instructions from the court.

To give the proceedings of the board a legal and binding effect, they should have been in writing. Unless thus shown, the acts of the board cannot be proved. The assertion of Mr Southard, that the board approved of the allowance for the extra services in arranging and examining the accounts which existed before his appointment, is not sufficient to establish the right of the defendant to the same. It is doubtful, whether the proceedings of the board could be proved by parol, but this is not the question before the court; it is whether such parol order could overrule what a former board had done in writing.

It is also suggested, that the proceedings of the board in 1829, by which the extra allowance was rejected, may contol the same. This was the act of the board, and it is immaterial whether it was composed of the same or of different individuals.

As to the commissions claimed on the disbursement of the money of the fund, it was argued by the attorney-general, that all public agents, unless in certain specified cases, must be appointed by the president. This is the provision of the act of March 3, 1809. 4 Laws, U. S. 220. Disbursements of the navy hospital fund come within the principles which regulate disbursements for the use of the navy; and if the act of 1809 applies to these disbursements, the commissioners could not appoint a disbursing officer.

No evidence of usage was admissible. If there was no law on the subject, no usage could sustain the practice. But if it was customary for a different description of officers to receive extra compensation, or commissions; no such custom could apply to a new office. The usage of the officers in the departments cannot make a law which shall bind the government. Usage, as connected with a particular office, may be evidence of an implied contract. But that cannot apply to newly created officers.

In reply to the argument for the defendant in error, the attorney-general admitted that the commissioners might appoint and employ agents to execute the duties attending the operations they were authorized to have conducted and executed; but such agents, he considered, must be appointed by the board. If a contract is made by an officer, it must be made under the authority of some law; and by the law, all authority was given to the board.

The defendant might have been employed to perform extra services for the board of commissioners; and he was not disqualified by reason of his being the secretary. But who had the power to authorize these services.

It is not pretended that the government is not bound by implied contracts, when services have been performed at the request of the government. But the agent who can thus bind it, must have authority to make the contract, or employ the person to perform the service out of which the implied contract arises.

[United States v. Fillebrown.]

A debt which can be set off against a claim by the government, must be one growing out of some contract or employment authorized by law: but it is denied that, under the act of 1797, all equitable demands against the government may be set off in a court of justice.

The acts of Mr Southard cannot be considered as the acts of the board; nor can those acts be proved by parol evidence, in opposition to the written proceedings of the board. All he did, must be considered subject to a ratification by the board; and void, unless so ratified. In this case, his acts were disaffirmed by the board in 1829, when the board acted in reference to them.

Nor could the board settle the defendant's accounts; they must be settled by the accounting officers of the treasury, in the ordinary way of settling accounts. The account of the defendant having been settled at the treasury, and his claims to the extra salary and for commissions disallowed there, the practice and understanding at the treasury, is shown to be adverse to such claims.

Mr Coxe and Mr Jones, for the defendant in error.

The allowance of a compensation for attention to the accounts of the navy hospital fund, and what was included in the duties assigned by the letter of Mr Southard, of the 22d May 1826, was in conformity with the frequent usages of the government. This was fully proved by the evidence. This principle has also had the ratification of the legislature. The usual duties of secretary could only have been prospective, and it was extra services to bring up the arrears of the board.

By an act of congress, of the 3d of March 1831, two thousand dollars were allowed to the clerk of the supreme court, for bringing up the minutes of the court, and for services which should have been performed by his predecessor. So the defendant in error was not bound as the secretary of the board to bring up old records of the proceedings of the commissioners, and to examine accounts which existed before his appointment.

The commissioners had authority to appoint a secretary under the third section of the act of 1811. The powers given to the board by that section, necessarily imply a power to appoint

agents, and to do what the trusts they had to perform required. They could not attend in person to the business and operations which the application of the funds under their charge enjoined upon the board. These operations were carried on in different parts of the United States.

The testimony and the correspondence of Mr Southard, show that a contract was made by him with the defendant; that an allowance was specified for the duties he was engaged in, which had the approbation of the board. The allowance presupposes the right to claim it. This was proved by competent evidence, as the board did not keep regular records of its proceedings, and no objection was made on the trial to the parol evidence; so that it is now free from all exceptions.

Nor can the rejection, in 1829, of the allowance of the salary under the letter of the 22d of May 1826, by the successors of those who made it, be of any value. The contract was made with full authority to make it; the duties which were the subject of the compensation, had been performed; and those who thus claimed the right to refuse or withhold the same, had no authority to do so.

As to the instructions given by the circuit court on the second prayer of the plaintiffs in error, it was argued that they were in conformity to the law, upon the evidence of the usage of the government in its different departments. This general construction of the acts of congress, and these harmonious views of the rights of those who performed extra services, should have due consideration.

There is no validity in the objection that such claims as those of Mr Fillebrown cannot be made the subject of set-off. All equitable claims, which have been properly exhibited in the first instance to the accounting officers, may be set up against the demands of the United States. The nature of the objection of the government to those who have been employed by them, entitles them to be so regarded. Pothier on Obligations, 1.

The powers given to the comptroller of the treasury in relation to the settlement of accounts by the act of congress of 1795, 2 Laws U. S. 502, making him the final judge upon claims presented to him, were, by the act of 1797, 2 Laws U.

VOL. VII.—F

S. 594, transferred to the courts; with the limitation that those claims must be first presented to the accounting officers of the treasury. Under the provisions of this act, all equitable as well as legal claims, founded on contract or the usage of the departments, may be brought forward before the court, and submitted under its direction to a jury. The government, by this act, places itself in the situation of an individual. The claims of the defendant are admitted, by the attorney-general, to be equitable.

The allowances of commissions are not forbidden by any statute; and the rules of the navy department admit them. Navy Rules, 17.

Cited, 3 Wheat. 173, to show the force of rules. Upon the principles contended for, cited, 6 Wheat. 135, 142; 1 Mason, 21; 12 Wheat. 559.

The case of the United States v. Watkins, 6 Wheat. 135, shows that any legal or equitable claim may be set off: and it is immaterial whether the claim of Mr Fillebrown had or had not been sanctioned by the board. The question is much broader. Did the board require or employ him to perform the services, and was he entitled to any and what compensation for it? His duty as secretary did not at all embrace the disbursement of the money of the fund. This was a duty of great responsibility, and this, as well as bringing up the arrears of records, was extra service.

Mr Justice THOMPSON delivered the opinion of the Court.

This case comes before the court on a writ of error to the circuit court of the district of Columbia. The action was brought to recover a balance certified at the treasury against the defendant, on the settlement of his accounts as secretary of the commissioners of the navy hospital fund. Upon this settlement, the defendant set up a claim for compensation, for what he considered extra services, in bringing up and arranging the records of the board antecedent to his appointment as secretary, and also for commissions on the disbursements of moneys under the orders of the board. These claims had been rejected by the accounting officers of the treasury, and were now set up by way of set off against the demand on the part

of the United States; and the questions before the circuit court were, whether the defendant was entitled to the compensation he claimed.

Upon the trial, after the testimony was closed, the counsel for the United States prayed the court to instruct the jury as follows:

1. That if, from the evidence aforesaid, it should appear to them that the defendant had accepted the appointment of secretary of the board of navy hospital commissioners upon the terms mentioned in the said appointment, and in the letter of Samuel L. Southard to him, of the 7th of November 1825, as hereinbefore stated; that in that case he was not entitled to any extra compensation for the disbursement of the moneys belonging to the said navy hospital fund; and that he was only entitled to two hundred and fifty dollars a year, for the whole of the services performed by him for the said board.

2. That if they should be satisfied, by the evidence aforesaid, that the said board of commissioners had never passed any order or resolution for the payment of any commission, upon the moneys disbursed by the defendant for the said board; and that the claim for commissions which he now makes, had never been sanctioned or settled by the said board; that it is not competent for him now to set up the said claim for commissions against the claim of the United States, for which this suit is brought.

Which instructions the court refused to give: but at the instance of the defendant's counsel gave other instructions which will be hereafter noticed.

The jury found a verdict for the defendant, and certified a balance in his favour, against the United States, for four hundred and thirty dollars; and the case comes here on a bill of exceptions.

Whether the first instruction asked on the part of the United States ought to have been given, must depend upon the defendant's appointment as secretary, and the extent of his duties under that appointment. The court was requested to instruct the jury, that if the defendant had accepted the appointment on the terms mentioned, he was entitled to no compensation

beyond his salary of two hundred and fifty dollars, for any services performed by him for the board.

The second instruction asked, involves the inquiry whether some order or resolution of the board for the payment of the commissions was not indispensably necessary to entitle the defendant to the allowance claimed by him.

The defendant was appointed secretary, at a regular meeting of the board, on the 7th of November 1825; and so far as his duties are defined, they are to be collected from the following resolution:

"Resolved, that a secretary be appointed to this board, to take charge of the books, papers, &c. belonging to the hospital fund, and to execute such duties relative thereto, *as may be required of him by the board,* for which services he shall be allowed the sum of two hundred and fifty dollars per annum."

The authority of the commissioners to appoint a secretary has not been denied; and this same authority must necessarily exist to appoint agents and superintendents for the management of the business connected with the employment of the fund; and which, in the absence of any regulation by law on the subject, must carry with it a right to determine the compensation to be allowed them.

It is admitted, on the part of the United States, that the defendant's being secretary of the board, forms no objection to his performing other services not included in his duty as secretary, and receiving a compensation therefor in the same manner as any other person might.

The terms on which the defendant accepted the appointment of secretary, being to execute such duties, relative thereto, as should be required of him by the board; it becomes proper to examine how the board considered the appointment, and what duties were required of him as secretary.

It is proper here to inquire, how the secretary of the navy, as one of the commissioners, stood in relation to the other members of the board.

It is evident from the manner in which this fund was created, and the purposes and objects to which it was applied, that the general and active superintendence over it belonged appropri-

ately to the secretary of the navy. It was therefore almost matter of course that the board should commit to him the principal management of the business, and consider him the agent of the board for that purpose. In addition to this, he was actually constituted such agent by the board.

Mr Southard, in his deposition, states that he was, *by the direction of the board*, and by the previous practice and usage, acting commissioner of the fund, and attended to all matters connected with it. But, when any new arrangements were to be made, or money to be expended on a new object, he consulted with, and had the approval and authority of the whole board. And all his acts were considered as authorized and sanctioned by the board.

With respect to the one hundred and twenty-five dollars claimed for six months salary, Mr Southard is very explicit. This allowance, he says, was made for *extra services*, and related to a time previous to his appointment; and that the allowance had the approbation of the board. This was a service not required or considered by the board as coming within his duty as secretary under his appointment, and a stipulated compensation agreed to be paid him therefor. It is not perceived what possible objection can exist against his being allowed this stipulated sum. Whether or not it was more than a just compensation for his services, is a matter which this court cannot inquire into. Indeed, that has not been pretended, if he is entitled to any thing beyond his salary of two hundred and fifty dollars.

With respect to the commissions, Mr Southard says, that, subsequent to the appointment of the defendant as secretary, the commissioners were enabled by appropriations, and collecting money belonging to the fund from various sources, to proceed to apply the funds to the establishment of navy hospitals as required by the act of congress. That these funds were placed in the hands of the treasurer of the United States, as the treasurer of the commissioners; and that in collecting and disbursing the fund, it was found indispensable to have an agent who should attend carefully to it, and be responsible to the board. *That this did not belong to the duties of the secretary.* But that it was thought best to give the agency to him on

account of his acquaintance with every part of the interest of the fund, and his fitness to discharge the duty. That he was appointed the agent with the understanding that he should receive a suitable compensation for the services he should render in *that capacity*. That it was the understanding of the commissioners that he should receive compensation in the mode, and according to the practice of the government in other similar cases. That he is under the impression that this was to be by a per centage on the money disbursed; and that he is also under the impression that he did, by the *authority of the board*, allow one or more of the accounts presented by the defendant in conformity to the facts and principles he has detailed.

From this testimony it is very certain that Mr Southard considered the agency of the defendant in relation to the fund as entirely distinct from his duty as secretary, and for which he was to have extra compensation. And it is fairly to be collected from this deposition, that all this received the direct sanction of all the commissioners. But, whether it did or not, it was binding on the board; for the secretary of the navy was the acting commissioner, having the authority of the board for doing what he did, and his acts were the acts of the board, in judgment of law. It was, therefore, an express contract entered into between the board or its agent, and the defendant; and it was not in the power of the board, composed even of the same men, after the service had been performed, to rescind the contract, and withhold from the defendant the stipulated compensation. There is no doubt the board composed of other members, had the same power over this matter as the former board. But it cannot be admitted that it had any greater power. The rejection, therefore, of these claims on the 7th of September 1829, after all the services had been performed by the defendant, can have no influence upon the question.

It has been argued, on the part of the United States, that the sanction of the secretary of the navy, as one of the commissioners, can give no right to the allowance without the concurrence of the other members. This proposition is not denied: but the testimony of Mr Southard, as has been already shown, goes fully to establish the fact, that he had the general autho-

rity of the board to act as its agent; and leaves little or no doubt of the sanction of the board to the particular claims in question.   It was, however, pretty strongly intimated at the bar, though it was not understood to be positively asserted, that these facts could not be established by parol, but that the proceedings of the board must be shown in writing.   And this would seem to be one of the questions intended to be made under the second prayer.   It would be a sufficient answer to this, that no objection was made at the trial to the admission of the evidence.   But the objection, if it had been made, could not have been sustained.   There is no general principle of law known to the court, and no authority has been shown establishing the doctrine, that all the proceedings of such boards must be in writing, or that they shall be deemed void, unless the statute under which they act shall require their proceedings to be rendered to writing.   It is certainly fit and proper that every important transaction of the board should be committed to writing.   But the law imposes no such indispensable duty.   The act of 1811, 4 Laws U. S. 311, constituting the fund for navy hospitals, only makes the secretaries of the navy, treasury and war departments, a board of commissioners by the name and style of commissioners of navy hospitals, and gives some general directions in what way the fund is to be employed; but the mode and manner of transacting their business is not in any respect prescribed.   It is not true even with respect to corporations, that all their acts must be established by positive record evidence.   In the case of the Bank of the United States v. Dandridge, 12 Wheat. 69, this court says, " we do not admit as a general proposition, that the acts of a corporation are invalid merely from an omission to have them reduced to writing, unless the statute creating it makes such writing indispensable as evidence, or to give them an obligatory force.   If the statute imposes such restriction it must be obeyed."   Considering then the testimony of Mr Southard as competent evidence to establish the acts of the board, it shows very clearly, that the services rendered by the defendant, and for which he claims compensation, were not embraced within his duties as secretary of the board; but were extra services, for which the commissioners agreed to make him compensation.

Another question may perhaps arise under the latter branch of the second prayer, whether the sanction or approval by the board of commissioners was an indispensable preliminary step to entitle the defendant to set up in the present action his claim against the demand of the United States. And we think it was not. If the board had authority to employ the defendant to perform the services which he has rendered, and these services have been actually rendered at the request of the board, the law implies a promise to pay for the same.

This principle is fully established in the case of the United States v. Wilkins, 6 Wheat. 143; which brought under the consideration of the court the act of the 3d of March 1797, 2 Laws U. S. 594, providing for the settlement of accounts between the United States and public receivers. And the court says, " there being no limitation as to the nature and origin of the claims for a credit which may be set up in the suit, we think it a reasonable construction of the act, that it intended to allow the defendant the full benefit at the trial of any credit, whether arising out of the particular transaction for which he was sued, or out of any distinct and independent transaction, which would constitute a legal or equitable set-off, in whole or in part, of the debt sued for by the United States," subject, of course, to the requirement of the act, that the claim must have been presented to the proper accounting officers and disallowed.

The circuit court, therefore, properly refused to give the instructions asked on the part of the United States.

The instructions given to the jury are as follows:

If the jury believe from the evidence, that the regular duties to be performed by the defendant as secretary to the commissioners of the navy hospital fund, at the stated salary of two hundred and fifty dollars per annum, did not extend to the receipt and disbursement of the fund; that the duty of receiving and disbursing the fund was required of, and performed by him as an extra service, over and above the regular duties of his said appointment; that it has been for many years the general practice of the government and its several departments to allow to persons, though holding offices or clerkships, for the proper duties of which they receive stated salaries or other fixed

[United States v. Fillebrown.]

compensation, commissions over and above such salaries or other compensation, upon the receipts and disbursements of public moneys appropriated by law for particular services, when such receipts and disbursements were not among the ordinary and regular duties appertaining to such offices or clerkships, but superadded labour and responsibility, apart from such ordinary and regular duties: and that the defendant took upon himself the labour and responsibility of such receipts and expenditures of the navy hospital fund at the request of said commissioners, or with an understanding on both sides that he should be compensated for the same as extra service, by the allowance of a commission on the amount of such receipts and expenditures, then it is competent for the jury in this case to allow such commissions to the defendant on the said receipts and disbursements as the jury may find to have been agreed upon between the said commissioners and the defendant; or in the absence of any specific agreement fixing the rate of commissions, such rate as the jury shall find to be reasonable, and conformable to the general usage of the government and its departments in the like cases.

These instructions were entirely correct, and in conformity to the rules and principles laid down in the former part of this opinion.

Another bill of exceptions was taken to the ruling of the court, with respect to evidence of usage.

The record states, that upon the trial of this cause the defendant offered to prove, by the testimony contained in the preceding bill of exceptions, the general usage of the different departments of the government in allowing commissions to the officers of government upon disbursements of money under a special authority, not connected with their regular official duties. The counsel of the United States objected to the admission of parol evidence to prove such usage, but the court permitted the evidence to be given.

The real point of this exception is not very apparent. From the form in which it is put, it would seem that the objection was to the admission of *parol* evidence of the usage. But this probably was not the restricted sense in which the objection was intended to be made. The offer, however, was not to

[United States v. Fillebrown.]

introduce new evidence of usage, but to prove it by the testimony contained in the preceding bill of exceptions. It amounted, therefore, to nothing more than a mere inference or deduction from the evidence already before the court and jury, and which had been admitted without objection. But we see no grounds for objection against the usage offered to be proved, and the purpose for which it was so offered, as connected with the very terms upon which the defendant was employed to perform the services. It was not for the purpose of establishing the right, but to show the measure of compensation, and the manner in which it was to be paid. Mr Southard states that it was the understanding of the commissioners that the defendant was to receive compensation, in the mode and according to the practice of the government in other similar cases. And the usage offered to be shown was, that such compensation was made by allowing commissions on the disbursement of the money expended; and in this point of view it was entirely unexceptionable.

We are accordingly of opinion that the judgment must be affirmed.

This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Columbia holden in and for the county of Washington, and was argued by counsel: on consideration whereof, it is ordered and adjudged by this court, that the judgment of the said circuit court in this cause be, and the same is hereby affirmed.