## Ewing, County Judge, et al. v. Hays et al.

(Decided Nov. 2, 1934.)

260

LAWRENCE S. GRAUMAN and STUART E. LAMPE for appellants.

STANLEY GARFEIN and ELWOOD HAMILTON for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Reversing.

The practice and procedure by which this appeal reached this court are not approved by us and must not in the future be regarded as a precedent, nor as an example of appropriate and correct proceeding to present questions like or similar to those here involved. Owing to the importance to the general public to have the involved statutes construed to apply in conducting the approaching election, and the parties desiring to have it done on this appeal, we shall consider and interpret these statutes, reserving our opinion on all other questions.

The paramount questions to be considered and determined are the duties of the county court clerk, the authority and duties of the county election commission, and the jurisdiction and duty of the fiscal court under section 1840, Ky. Stats., section 1482 of 1933 Supplement to the present Kentucky Statutes. That portion of section 1482, prescribing the duties of the county clerk, is in this language:

"When the hour of four P. M. has arrived the officers" of the election "shall then go and take charge of the ballot box, at the booth, * * * then stamp upon all unused stubs and ballots, with rubber stamp or by writing on the stub and the ballot attached thereto, the word 'unused' and place said stub or ballot book and all other utensils or election material into a linen envelope. * * * The officers of election shall immediately deliver the ballot box, stub book and the envelope containing the unused ballots to the county clerk. * * * Said officers

shall also upon delivery to the county court clerk of the ballot box and the poll books, certificates and the envelope containing the spoiled, mutilated and questioned ballots and the keys to the ballot box, together with the county election seal. * * * The county court clerk, upon receiving said ballot box and envelope from the election officers shall receipt for the same and shall place said ballot boxes and envelopes in a secure and substantial place and shall keep a sufficient guard over said boxes and envelopes in a careful and painstaking manner until all the ballots have been counted by the election commissioners and those acting with them. * * * The county clerk shall assist the county election commission, and shall act as its clerk, in the counting and certifying of the ballots and the results of said election, for which he shall receive compensation to be allowed by the fiscal court. * * * There shall be provided by the county clerk a large sheet upon which to tabulate the vote of the whole county, district or municipality, so that each candidate can ascertain the number of votes in each precinct and the total number in the election unit, cast for him.''

As section 1482 relates to the county election commission, it reads:

''The county election commission, for the purpose of counting the ballots and issuing certificates and making reports, shall meet on the first week-day after any primary or general election at 10 o'clock on said day in the office of the county clerk, and proceed as speedily as practical, to count the ballots of every precinct in such county and at the finish of each and every precinct they shall announce the result at the door of the clerk's office and they shall fill out the blank in the back of the stub book provided for that purpose and each commissioner shall sign the same on a blank provided for that purpose. The election commission is authorized to employ at county expense, such clerical help as said commission may deem necessary to make said count, and shall remain continuously in session, until each and every precinct has been counted and the result ascertained, Sundays and legal holidays excepted. * * * If any ballots are found mutilated, defaced, marked or spoiled or otherwise questionable so that they are of doubtful

integrity, the commission shall put all such ballots in a sealed envelope after writing on them and each of them, whether they have been counted, and for whom. * * * The said election commission shall issue to successful candidates for office or nominations, their certificates of election or nominations in all county, magisterial districts or any subdivision of any county and shall certifiy the result of the election in their said county. * * * The county election commission after fifteen days, provided no contest is filed in any race against any candidate, shall return the keys to said ballot boxes to the county court clerk, but if any such contest, either of nominations or elections, has been filed, said commissioners shall hold said keys subject to the orders of the court trying such contest.''

This section governs the conducting and counting of ballots, and certifying returns in general and primary elections. It contains this clause:

''Nothing herein contained shall be construed to prevent the election commissioners in counties having cities of the first, second and third class from employing extra tabulators, who under their supervision and responsibility may expedite the counting of the ballots.''

The county election commissioners of Jefferson county, in the performance of the statutory duties imposed upon them by section 1482, assumed the authority to employ forty-two guards for 3 days at $4 or $5 each per day; four sheet writers for 3½ days at $15 each per day; ten certificate writers for 2½ days at $10 each per day; five door men, two for 2 days at the rate of $8 each per day, and three for 2 days at $15 each per day; eight ''sealers'' for 2 days at $10 each per day; three ''representatives'' for 3½ days at $10 each per day; one radio announcer for 2 days at $5 per day; two ''certificate keepers'' for 3½ days at $7 each per day; one ''receipt taker'' for 1 day at $4 per day; one ''guard'' for 1 day at $10 per day; two additional ''receipt takers'' at $10 each per day; eighteen ''book carriers,'' a few of them for 3½ days, one 2½ days, and the others 2 days, all at $10 each per day; fourteen box carriers for 2 days at $10 each per day; one hundred seventeen tabulators for 2 days at $12.50 each per day; two ''callers'' for 3½ days at $10 each per day; two

chief tabulators for 9 days at $350 for 9 days, and "clerical work done for election commissioners $100.00."

On August 4, 1934, the county election commission met at 6 o'clock a. m. in the clerk's office in the courthouse and remained in continuous session until the completion of the tabulation. However, the tabulation was made at the Jefferson county armory. On the 8th day of August, the commission met in the office of the sheriff and adopted a resolution, containing this statement: "After a full and detailed discussion by the commission, with each and every employee, and the work which was done during the counting of the ballots, etc., it thereby allowed the sheriff of the county" the sum of $1,706.39 less $10.00 as his expenses for the primary election; and the "guards," "sheet writers," "certificate writers," "door men," "sealers," "representatives," "radio announcer," "certificate keepers," "receipt takers," "box carriers," "tabulators," "callers," "sheet tabulators," and $100 for "clerical work" of the commission, the number of days and the amounts per day stated above. This resolution was presented to the fiscal court with the request for the payment out of the funds of the county to the named individuals for the number of days and the compensation per day stated above. The fiscal court declined to pay same when requested.

The county clerk and county election commission are public agencies, and, so long as they act within the limits of the authority conferred upon them by section 1482 in the performance of their duties, their acts are the acts of the county and cannot be repudiated by the fiscal court. Such acts, however, may be reviewed by it. It must be observed that the authority to provide guards at the expense of the county for the purposes of section 1482 is expressly conferred upon the county clerk to secure the integrity and safety of the ballot boxes in his office, where they must remain in his control and custody, subject to his supervision and under the obligations imposed upon him by the statute, faithfully to discharge the duty thereby imposed in relation thereto. This duty of the county clerk begins at the moment the ballot box, unused stubs and ballots, and the keys to the ballot box are delivered to him by the election precinct officers and continues to the moment the commission and its counters desire the box to be opened, the ballots exposed and the counting and tabu-

lating the ballots by the commission, counters, and extra tabulators selected by it is commenced, at which time it becomes the duty of the clerk by himself, deputy, or representative to place the ballot box, unlocked, surrendering all control of the ballots, at the or near the table of the commission the counters or tabulators for their use, and the commission and the counters or tabulators thereupon become responsible for the integrity of the ballots, during the period of their control and until the count and all work incident thereto shall have been completed by counters or tabulators, under the personal supervision and direction of the commission and the ballots returned to the box, when it immediately becomes the duty of the clerk or his deputy or representative to assume control of the box, lock it, deliver the keys to the commission, and forthwith remove the box out of the way of the commission, counters, or tabulators to such place of safety as he may provide for the ballot boxes to make assured the integrity of the counted ballots.

The statute expressly conferring the authority upon the commission to employ "at county expense, such clerical help as said commission may deem necessary to make said count," including "extra tabulators," in the absence of a statute to the contrary, its authority to employ them carries with it the right to determine the compensation to be allowed them. United States v. Fillebrown, 7 Pet. 28, 8 L. Ed. 596; Throop on Public Officers, sec. 551, page 522. The number of individuals necessary to be selected by it for the "clerical help" and "extra tabulators to make said count," is entirely in its sound discretion. And the same is true as to the compensations it may agree to pay them, subject to the qualification that public policy forbids a public officer with discretionary power to make contracts that amount to financial imposition (Werner v. Hillman Coal & Coke Co. et al., 105 Pa. Super. 503, 161 A. 455; Labrie v. Manchester, 59 N. H. 120, 47 Am. Rep. 179; Mechem on Public Offices, secs. 832 and 834, page 556); also, if the contract of employment or the agreement on the amount of the compensation is the result of fraud or collusion, it is invalid (Fiscal Court of Jefferson County v. Louisville Tent & Awning Co., 185 Ky. 466, 215 S. W. 88; Krieger v. Standard Printing Co., 191 Ky. 552, 231 S. W. 27; Allen County Fiscal Court v. Allen County Board of Education, 242 Ky. 546, 46 S. W. [2d] 1070). In each case of employment by the commission, the per-

son dealing with it must know that it acts only by virtue of a delegated power, and must, at his peril, know that it can employ him only for the purposes directed by section 1482, and that unless the commission strictly complies with this section, or if it exceeds its statutory authority, its acts are void. Leslie County v. Keith, 227 Ky. 663, 13 S. W. (2d) 1012; The Floyd Acceptance, 7 Wall. 666, 19 L. Ed. 169; Mechem on Public Offices, supra; Throop on Public Offices, secs. 551 and 593.

It should be observed that section 1482 provides the clerk of the county court act as clerk of the commission and he shall assist it in the counting and certifying the ballots and the result of the election, and he shall receive compensation therefor to be allowed by the fiscal court. The language of this section conferring upon the commission authority to employ at county expense such clerical help and extra tabulators, as it may deem necessary "to make said count," must be read in connection with the portion thereof requiring the county clerk to render services and receive thereunder "compensation to be allowed by the fiscal court." As it relates to both the duties of the county clerk and the authority and duties of the election commission, it must be so construed as to effect the plain and manifest purpose of the Legislature in enacting it. Goodpastor v. United States Mort. Bond Co., 174 Ky. 284, 192 S. W. 35. To ascertain the intention of the Legislature, it is always proper to look to the purpose which it had in view in enacting the particular statute (Felts v. Edwards, 181 Ky. 287, 204 S. W. 145, Com. v. Barnett, 196 Ky. 731, 245 S. W. 874); and the court will give its language a practical construction in arriving at the intent and purpose of its enactment (Nuetzel v. Will, 210 Ky. 453, 276 S. W. 137; Com. v. Kirk, 212 Ky. 646, 279 S. W. 1091, 44 A. L. R. 816).

It is not the intendment and purpose of the language of section 1482 to confer on the election commission the statutory duties of the county clerk; nor to deprive him of the actual control and possession of the ballot boxes and stub books and to relieve him of his statutory obligations to protect the integrity of the ballots from the time they were received by him from the hands of the election officers up to the moment they are surrendered to the commission at the table of the counters and tabulators for the sole purpose of their counting and tabulating the ballots, and when any one

or all of them should be removed for the convenience of the counters or tabulators, they are to be immediately taken possession of by the clerk, and locked and the keys delivered to the commission. To construe it otherwise, is to be forgetful of the manifest intention of the Legislature to place the entire responsibility upon the county clerk to care for and safely keep the ballot boxes under his control and supervision, except during the period required for counting the ballots, sealing them in an envelope, filling out the blank in the back of the stub book for the signature of the commissioners and entering on the large sheet furnished by the clerk the tabulation in the manner set forth in the statute.

It is the duty of the clerk to act as clerk of the commission, which embraces the duty to prepare, fill out ready for the signatures of the commissioners, each and every certificate of nomination or election of the candidates, and, when signed by the commissioners, promptly deliver each to the person entitled under the statute to it.

It is not the purpose of section 1482, nor does it confer on the commission and its clerical help and extra tabulators any control over the ballot boxes, or enjoin upon them any duties concerning the same, except only during the period of time required to proceed "as speedily as practical" to count the ballots of every precinct in the county of each and every precinct. And it only confers upon the commission authority to select a reasonable number of clerical assistants and extra tabulators at a reasonable compensation, in the circumstances to perform expeditiously as practical the services indicated above, with the assistance of the county clerk in the counting and certifying of the ballots and the result of the election. It is the mandatory duty of the clerk faithfully and efficiently to render the services defined therein.

It is not the purpose of the statute to confer power upon the commission to select unnecessary, excessive, or useless number of clerical assistants and tabulators or extra tabulators to make "said count," and to bind the county to pay them an unreasonable, exorbitant compensation, amounting to a donation or gift, under the guise of compensation for services and place their acts in so doing beyond the jurisdiction of the fiscal court to protect and conserve the funds of the county

against financial imposition at the hands of the commission. This statement applies alike to the clerk in the exercise of his authority in discharging his duties thereunder.

Section 1482 must be read in connection with section 1840 which confers exclusive jurisdiction upon fiscal courts "to regulate and control the fiscal affairs" of the county and "to cause correct accounts and records to be kept of all receipts and disbursements" of the county's funds. When allowing claims of the county clerk or of the county election commission reported by it to the court in the name and for the use of the persons employed by them and the agreed compensation for each, for their respective services, in accordance with section 1482, the fiscal court acts judicially, but the court is without right arbitrarily and capriciously to allow or disallow in whole or in part such claims, and must do so in the exercise of a judicial discretion which means to do nothing more nor less in the case than what the ends of justice demand, or what is just and proper in the circumstances. The jurisdiction of the fiscal court, as it concerns the claim presented by the county clerk under section 1482 and as it relates to a claim of the election commission for the services and compensations of clerical help, and extra tabulators whom they select thereunder, is analogous to its jurisdiction under section 4399a-8, Ky. Stats., giving the county board of education the authority to prepare and present a budget and demand of the fiscal court, a tax levy for school purposes, at a rate not greater than 75 cents, which has often been construed by this court. See County Board of Education of Daviess County v. Fiscal Court, 221 Ky. 106, 298 S. W. 185; Fiscal Court of Cumberland County v. Board of Education of Cumberland County, 191 Ky. 263, 230 S. W. 57; Elliott County Fiscal Court v. Elliott County Board of Education, 193 Ky. 66, 234 S. W. 947; Allen County Fiscal Court v. Allen County Board of Education, 242 Ky. 546, 46 S. W. (2d) 1070, 1071. Therein we have stated the rule to be:

"That, in the absence of a showing of bad faith on the part of the county board of education, or the inclusion in its budget of illegal items which would amount to bad faith, it is the duty of the fiscal court to make the levy demanded within the limits fixed by the statute."

This rule and the reason for it are applicable and control the county clerk when presenting his claim, and the county election commission, when reporting to the fiscal court the names of the clerical help and extra tabulators, showing the number of hours or days each was engaged and their agreed compensation, and the fiscal court when determining whether the claims amount to financial imposition or any one or more of the stated compensation appear to be the product of bad faith or illegal.

While the statute is silent as to how and by whom the claims of the clerical help and extra tabulators, employed by the election commission, shall be presented to the fiscal court for its action thereon, it is clearly the implied duty of the commission to make and present to it a statement showing the persons employed, the rate per day of each employee, the time each engaged and the agreed compensation of each. The resolution herein was an attempted performance of this duty. Adverting to it, the commission was without authority to allow the claim of $1,706.39 less $10 to the sheriff. His fees for services rendered in the discharge of his duties in connection with holding elections are fixed by a statute and he is entitled to none other. According to our construction of the statutes, the commission was without authority to employ and agree to pay out of the funds belonging to the county, "guards," "sheet writers," "certificate writers," "door men," "sealers," "representatives," "certificate keepers," "receipt takers," "book carriers," "box carriers," and pay the $100 for "clerical work" for the commission.

It is our conviction the employment by the commission of the "guards," "sheet writers," "certificate writers," "door men," "sealers," "representatives," "certificate keepers," "receipt takers," "book carriers," "box carriers," and $100 item for "clerical help to the commissioners" was unauthorized by section 1482 and its contracts appertaining thereto are void and unenforceable. Those individuals who accepted employment from the commission to do the work did so at their peril, for, as we have indicated, they were required by law to know the limitation of the authority of the commssion to engage, and promise to pay, them. The Legislature by its enactment of section 1482 has not clothed the commission with the privilege to indulge in

prodigality at the expense of the county's funds. It is not like the Lady of the Snows privileged to say:

"The Gates are mine to open,
The Gates are mine to close."

On presentation of the resolution containing the illegal items discussed above, the fiscal court was well within its rights in refusing to allow any of those items not for the services of the "counters or tabulators or extra tabulators," but whether the claimed compensations of the individual counters or tabulators and extra tabulators, on their face, or any one or more of them, are so excessive as to indicate bad faith, and, within the rule reiterated herein, we express no opinion as this is a question for the judgment of the fiscal court when those claims are presented to it by the commission for allowance.

We find no provision in the statute, forbidding the county clerk and the election commission, or either of them, and the fiscal court tentatively agreeing in the advance of the employment by the clerk and the commission or either of them, individuals to assist in the discharge of the duties of special deputies, or "clerical help," "counters," and "extra tabulators" or the number to be employed by either of them, and the compensation they shall pay each of the employed individuals, to the end that extravagant, unreasonable compensation shall not be promised, reported by either the clerk or the commission to the fiscal court and thus avoid later controversies and disputes.

Wherefore, the judgment is reversed for proceedings consistent with this opinion.

The whole court sitting, except Judge Dietzman.