# Taylor et al. v. Chandler et al.

(Decided Oct. 25, 1935.)

R. L. VINCENT for appellants.

CLIFFORD E. SMITH, D. L. STREET and SAMUEL M. ROSEN-STEIN for appellees.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming in part and reversing in part.

This appeal calls for a statement and construction of section 1470, Carroll's Kentucky Statutes, 1930 Ed., and of 1481 and 1482, Baldwin's 1933 Supp., Kentucky Statutes, in connection with the facts stated in the petition.

The action is brought by A. B. Chandler, the duly elected and qualified nominee of the Democratic Party for the office of Governor of Kentucky; Keen Johnson, the duly elected and qualified nominee of the same party for the office of Lieutenant Governor; Bailey P. Wootton, the chairman of the State Central Executive Committee of the Democratic Party in Kentucky; and Robert Humphreys, the chairman of the State Democratic Campaign Committee and a member of the State Central Executive Committee of the Democratic Party in Kentucky, for and on behalf of themselves and for the benefit of all other elected and qualified nominees of the Democratic Party in Kentucky, for state offices, and all other members of the State Central Executive Committee—against Reuben Taylor, chairman, O. L. Mitts and John Jouett, the members, of the board of election commissioners of Grant county, Charles Webb, the Chairman of the Democratic Committee of Grant county and as a representative of all the other members of the Democratic Executive Committee of Grant county; and R. F. Lanter, the clerk of the county court of Grant county.

The action is prosecuted under the Declaratory Judgment Act (Civil Code of Practice, sec. 639a—1 et seq.).

Section 1481 reads:

"The county executive committee of any political party, having a ticket to elect or list of candidates to be nominated at any general or primary election may designate, not more than two challengers or inspectors to be present at and witness the holding of said general or primary election, in each precinct in said county."

Section 1470 provides that each political party may in writing appoint one challenger for each precinct who shall be entitled to stay in the room or at the door thereof.

"Such challenger shall be appointed in writing by the chairman of the county or other local committee of their political party."

Section 1482, in part, reads:

"The county court clerk, upon receiving said ballot box and envelope from the election officers shall receipt for the same and shall place said ballot boxes and envelopes in a secure and substantial place and shall keep a sufficient guard over said boxes and envelopes in a careful and painstaking manner until all the ballots have been counted by the election commissioners and those acting with them. Providing, that the chairman of each of the two dominant political parties, shall have the right, and each candidate to be voted for, at any election, may designate one or more persons to assist the county clerk and other guards, to guard the safety of the ballots in said clerk's office. The county clerk shall assist the county election commission, and shall act as its clerk, in the counting and certifying of the ballots and the results of said election, for which he shall receive compensation to be allowed by the fiscal court. * * *

"In all general elections the governing authority of each political party, and in all primary elections, each group of candidates for an office, may designate to the county election commission, one representative each to meet with the county

election commission, as herein provided, and it shall be the duty of said commission to permit said representative to assist in, and witness the count of the ballot in all the precincts of such county and each and all of said commissioners and said representatives, so designated, shall have equal and full opportunity to inspect and count said ballots, and it shall be unlawful for any county election commission or a majority thereof, to refuse to permit said representative to exercise full and free action in witnessing the count of said ballots and any interference with, or refusal, on the part of said election commission, or either of them, to permit said representatives, either of a political party, or of a candidate, or group of candidates, to have a free and full opportunity to witness and observe the counting of said ballots, shall be guilty of a high misdemeanor, and upon conviction thereof shall be fined not less than one thousand dollars nor more than two thousand dollars or imprisoned in the county jail not less than six months nor more than twelve months in the discretion of the jury.

"The county election commission after fifteen days, provided no contest is filed in any race against any candidate, shall return the keys to said ballot boxes to the county court clerk, but if any such contest, either of nominations or elections, has been filed, said commissioners shall hold said keys subject to the orders of the court trying such contest."

It is charged in the petition that the election to be held on November 5, 1935, at which the candidates named in the petition are to be voted for and against, is the regular state election at which will be elected the Governor and all other elective state officers, members of the Lower House of the General Assembly, members of the State Senate for one-half of the Senatorial Districts, and Railroad Commissioners, and in some counties the nominees of the same party for local offices.

A demurrer was filed to the petition and overruled by the court. A decree was entered declaring that sections 1470 and 1481 were consistent, and that the former was not repealed by the latter, and that when

they are construed as one in connection with section 1482, the State Central Executive Committee, and not the County Executive Committee of Grant County, is authorized to designate the party's guards to act in the counting and tabulating of the ballots by the election commission and those acting with them.

It was the opinion of the trial court that the phrase "the governing authority" of each political party, as it is used in connection with the phrase "in all general elections," conferred the authority upon the State Central Executive Committee, and not upon the county executive committee, to "designate to the county election commisssion, one representative each to meet with the county election commission," "to assist in, and witness the count of the ballot in all the precincts of such county," with "equal and full opportunity to inspect and count said ballots," and "to have a free and full opportunity to witness and observe the counting of said ballots."

It was also the opinion of the trial court that sections 1470 and 1481 were in operation and authorized either the county executive committee or the county campaign committee to appoint challengers as therein provided for.

Section 1470 provides "such challenger" shall be appointed by the chairman of the county or other local committee of their political party. Section 1481 definitely confers authority upon the county executive committee to designate not more than two challengers for each precinct, to be present and witness the holding of either a general or primary election.

The act which section 1481 is a part contains a repealing clause.

The language of sections 1481 and 1482 plainly manifests the intention of the Legislature to confer upon the county executive committee of each political party the sole authority to designate to the county election commission, the challengers, the guards, and also one representative of each political party; the latter is provided for by section 1482. If the Legislature had intended that the State Central Executive Committee and not the county executive committee of each political party should exercise the authority conferred by section 1482, it would have been easy for it to have used, and doubtless it would have used therein, the

word "state" preceeding, the words "the governing authority" of each political party. The failure of the Legislature so, or otherwise, to indicate its intention to confer this power upon the State Central Executive Committee of each political party, and thus divide between the State Central Executive Committee and the county executive committee of any political party, the authority vested by sections 1481 and 1482, is convincing that it did not intend by the use of the words "the governing authority," in section 1482, to partition such authority between them, which is inevitable if the court's construction of section 1482 is the correct one.

It is our reading of section 1482 that the county executive committee of each political party "may designate to the county election commission, one representative each to meet with the county election commission" and "assist in, and witness the count of the ballot in all the precincts of such county," and the commission must accord the representative of each party so designated "equal and full opportunity to inspect and count said ballots," with a "free and full opportunity to witness and observe the counting of said ballots." Hence, we do not thus far agree with the trial court in his construction of either section of 1481 or 1482.

The court's construction of section 1482 was that the county clerk was the custodian of the ballot boxes and envelopes from the time they were received by him from the precinct election officers, except while the ballots were actually being counted by the commission and those acting with them. We concur in this, to which we shall hereinafter advert.

The obligation is upon us to consider and construe section 1482, and determine the number of guards each of the two dominant political parties, and also the number of guards each of the candidates to be voted for at the election, may designate to assist the county clerk and his guards to guard the safety of the ballots from the moment he receives the boxes and envelopes of the several precinct election officers, "until all the ballots have been counted by the election commissioners and those acting with them." The duty is likewise upon us to define the coexistent, interrelated, co-ordinate, and distinct duties and rights thereunder of such guards, of the county court clerk, and of the county

election commisson, its counters and tabulators, from the moment the county court clerk or his representative surrenders and delivers the ballots in the box to the election commission, for the purpose of counting and tabulating them until all the ballots in every box shall have been counted by the election commission and those acting with them. To accomplish this, the statute must be construed with the facts presented in mind.

It is alleged in the petition that on account of the size of the county court clerk's office of Grant county, the county clerk, his guards, the election commission, its counters and tabulators, will be required to assemble and count and tabulate the ballots cast in the ensuing November election, in a larger room than the county clerk's office.

Accepting this as true, which it is our duty to do, on a demurrer to the petition, it is plain that, in the circumstances, the county election commission, in order to accomplish as speedily as practicable the count and tabulation of the ballots as contemplated by the statutes, will be required to allot the ballot boxes and assign the duty of counting and tabulating the ballots therein to separate groups of counters and tabulators in different places in the room in which the count and tabulation will be made by them. It is apparent when the count and tabulation is thus conducted, either in or out of the county clerk's office, a number of guards will be required. Therefore, the two dominant political parties and each candidate voted for at the election are entitled to designate to the election commission and to have present one guard, each, for each group of counters, separatedly engaged in the count and tabulation from the beginning, during, and to the completion of the counting and tabulating the ballots of all the precincts of the county. It is the statutory duty of the county clerk and of the county election commission and those acting with them to recognize and observe the legal right of such political party and such candidate to designate and have present one guard, each, for separate groups of counters and tabulators.

In Ewing, County Judge, v. Hays, 257 Ky. 259, 77 S. W. (2d) 946, we construed section 1482, as it relates to, and governs, the correlative and separate duties of the county court clerk and the county election commis-

sion and those acting with them during the performance of their respective duties as they are defined by section 1482.

The duties and rights of the guards of each political party whose nominees are to be voted for and the guards of each candidate to be voted for, at the election, and those of the county clerk and election commission, and those acting with them are as distinguishable and as easy to be defined as those of the clerk, the commission, and those acting with them, which are defined and separated in Ewing, County Judge, v. Hays, supra.

It is not doubtful that the time of the commencement of the performance of the duties and the exercise of the rights of the guards of each of the political parties, and also of each candidate, is the moment the clerk receives the ballot boxes and envelopes from the precinct election officers, and continues "until all the ballots" are counted by the election commission and those acting with them.

The duties and rights of the guards of such political parties, and of each of the candidates and of the election commission and those acting with them during the count and tabulation of the ballots, commence simultaneously with the act of the county clerk or his representative, surrendering one or more of the ballot boxes containing the ballots to the election commission and those acting with them. Such guards have the right to go with the ballot boxes, or any of them, and the envelopes, to whatever place or room they, or any of them, may be taken by either the county court clerk, his representative, and/or by the county election commission and those acting with them, and it is the statutory duty of the clerk, the commission, and those acting with them, to recognize and observe this right of such guards.

From the moment a ballot box is unlocked, opened, and the ballots surrendered by the county court clerk or his representative to the election commission and/or those acting with them, and during the entire time in which they may be engaged in counting and tabulating the ballots, "until all the ballots have been counted by the election commssioners and those acting with them," they are entitled to be accorded, and it is the statutory duty of the commission and those acting with them to

accord to each of such guards, a free and full opportunity to be constantly in sight of each ballot box, whether locked or opened, and of the ballots, with the unrestricted privilege and right to be continuously close enough to each box and the ballots, whether in or out of the box, to observe and protect, to see and to know, the safety and integrity of the ballots, and also an equal and full opportunity to see and to know that none of them, in the process of the count and tabulation, is altered, changed, mutilated, extracted, substituted, or tampered with in any manner, by any method. But no guard of either political party nor of any candidate voted for at the election may participate in either the count or tabulation of the ballots, except with the consent of the commission.

This plainly is the intendment and meaning of the above-quoted portion of section 1482. To construe it otherwise is to overlook, or forget its language. The judgment of the circuit court, in this respect, is consonant with our views.

It is reversed in part and affirmed in part as herein indicated, with directions to enter a decree consistent herewith.

The whole court sitting.