CASE 68.—ACTION BY E. S. STUART AND ANOTHER AGAINST J. W. PETRIE AND OTHERS.—May 25. 1910.

## Stuart, &c. v. Petrie, &c.

Appeal from Christian Circuit Court.

J. T. HANBERRY, Circuit Judge.

From a judgment dismissing the petition plaintiff appeals.—Affirmed.

1.  Schools and School Districts—Proceedings to Establish— Order of Court—Fixing Boundaries of District—Sufficiency of Order.—That the order of the county court for an election to determine whether the voters of the proposed district would vote an annual tax to maintain a graded school district set out the boundaries of the proposed district so as to clearly define them and directed the vote to be taken within such district was sufficient within Ky. St. section 4464, requiring such order to fix the boundaries of the proposed district, though the order did not expressly state that boundaries named therein were those of the district.

2.  Appeal and Error—Conclusiveness—Equity Cases.—The Supreme Court gives considerable weight to the chancellor's findings, where the evidence is conflicting.

3. Time—Fraction of Day.—Where the term of office of a county school superintendent expired on the first Monday in January, she was the county superintendent on that day until her successor qualified; the law taking no account of fractions of a day.

4  Schools and School Districts—Establishment—Approval by Superintendent.—If the petition to  establish a  common graded school district is approved in good faith by the county superintendent in office when it is approved and is therafter filed, there is a sufficient compliance with Ky. St. section 4464, requiring the proposition to establish such district to be approved in writing on the petition by the county superintendent of schools.

5. Schools  and  School Districts—Proceedings—Amendments to Petition—Materiality.—Ky. St. section 4464, requiring the order of the county court for an  election to  determine whether the voters of a proposed school district would vote an annual tax to maintain it, to fix the boundaries of the proposed  district,  as  agreed  on  by  the  county judge  and  petitioners,  permits a county judge to correct mistakes as to boundaries of the district and persons included therein, so that the correction by amendment of the petition for the district by including and excluding certain persons from its boundaries was immaterial, and did not affect the validity of the order; the county judge being authorized to enter the same order, though the petition had not been amended.

6  Schools and School Districts—Proceedings to Establish—Statutory Provisions—Compliance—Sufficiency.—Ky. St. section 4464, providing for the  establishment of  a  common graded school district by petition, and requiring the county judge to order an election in the proposed district to determine whether the voters will vote an annual tax to maintain it, need only be substantially complied with.

JOHN STITES and JOHN FELAND for appellants.

SELDEN Y. TRIMBLE, C. H. BUSH and PERKINS & TRIMBLE for appellees.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming.

Fair View is a village lying one-half in Todd county and one-half in Christian county.  On January 1,

1906, a petition was filed in the Christian county court looking to the creation of a graded school district in and about the village. A similar petition was filed in the Todd county court. Both courts made an order directing a vote to be taken on the proposition in the boundary proposed. The vote was taken, and resulted in favor of the proposition to establish a graded school. The trustees qualified, and were about to levy a tax and start the school, when E. S. Stuart and Wallace L. Layne, two taxpayers of Fair View, suing for themselves and on behalf of all other taxpayers, brought this suit to enjoin them from so doing on the ground that the proceedings were void. The legality of the proceedings was attacked on four grounds: (1) That the county court failed in its judgment to fix the boundary of the proposed district. (2) That parts of school districts 30, 36, and 50 of Christian county were included in the boundary, and none of the trustees of these districts had approved the petition. (3) That the petition was not approved by the school superintendent of Todd county. (4) That the petitioners, after their petition had been approved by the trustees of the Fair View districts and by the superintendent of the two counties, amended their petition. Issue was joined upon the allegations of the petition, proof was taken, and, on final hearing, the circuit court dismissed the petition. The plaintiffs appeal.

Section 4464, Ky. St. (Russell's St. sec. 5736), provides: "It shall be the duty of the county judge in each county of this commonwealth, upon a written petition signed by at least ten legal voters, who are taxpayers in the justice's district, town or city of the fifth or sixth class in his county to make an order on his order book, at the next regular term of his court

after he receives said petition fixing the boundary of any proposed graded common school district, as agreed on by the county judge and the petitioners, and directing the sheriff or other officer, whose duty it may be to hold the election, to open a poll in said proposed graded common school district, at the next regular state, town or city election to be held therein, or on any other day fixed by said judge in said order, not in either case earlier than forty days from the date of said order, for the purpose of taking the sense of the legal white voters in said proposed graded common school district upon the proposition whether or not they will vote an annual tax, in any sum named in said order, not exceeding fifty cents on each one hundred dollars of property assessed in said proposed graded common school district, town or city, belonging to said white voters or corporations, or a poll tax in any sum named in said order, not exceeding one dollar and fifty cents per capita on each white male inhabitant over twenty-one years of age residing in said proposed graded common school district, or both an ad valorem and a poll tax, if so stated in the order, for the purpose of maintaining a graded common school in said proposed graded common school district, and for erecting, purchasing or repairing suitable buildings therefor if necessary: Provided, that the proposition to establish any graded common school district and school, as provided for in this section, is approved in writing on the petition to the county judge by a majority of the trustees of any common school district, included wholly or partly within the boundary of said proposed graded common school district and approved in writing on said petition by the county superintendent of common schools." The order of the court sets out that a pe-

tition had been filed properly signed asking that a graded common school district be organized with its boundary as follows. The boundary of the proposed district is then set out. The order further recites that it appearing that the county superintendents of Todd county and Christian county have indorsed on the petition their approval, and that the trustees of each common school district affected have indorsed their approval on the petition, it is ordered that the sheriff open a poll, and take the sense of the district as to whether the tax shall be levied "for the purpose of establishing and maintaining a common graded school therein" as provided in the statute. While the order of the county court does not in terms fix the boundary of the district, it sets out the boundary and directs the vote to be taken in that boundary on the question of establishing and maintaining a graded common school therein. This clearly defines the boundary of the district, and fixes it as certainly as if express words had been used declaring that the boundary so named should be the boundary of the district. What is necessarily implied need not be expressed.

2. As to whether any part of districts 30, 36, or 50 is included in the boundary of the common school district the proof is conflicting. But the weight of the evidence sustains the conclusion of the chancellor on the question of fact. We give considerable weight to the chancellor's conclusion on the facts where the evidence is conflicting; and we see no reason for disturbing his conclusion on this question of fact. It is evident from all the proof that the territory which is embraced in the present graded school boundary has been for many years embraced in the Fair View common school district, and that there was no effort in

the establishment of the graded school to extend the boundary of the old district so as to take into the graded school district any territory which was not then regarded as a part of the Fair View district. The plaintiffs live in Fair View. They are admittedly in the district. None of the people who it is claimed were cut off from districts 30, 36, or 50 and included in the graded school district are complaining. While the numerical weight of the evidence is pretty evenly balanced, there are a number of circumstances strongly supporting the conclusion of the circuit court, and it does not appear that appellants were prejudiced by these matters. See Hundley v. Singleton, 62 S. W. 1131, 23 Ky. Law Rep. 2006; Kutawa School District v. Eddyville District, 99 S. W. 905, 30 Ky. Law Rep. 839.

3. Miss Mina Griffin was county superintendent of Todd county from the first Monday in January, 1902, to the first Monday in January, 1906. The petition for the establishment of the Fair View school was presented to her and approved by her on Saturday, December 30, 1905. Fair View is about 20 miles from the county seat of Christian county, and some distance from the county seat of Todd county. After the petition was approved by Miss Griffin as superintendent on Saturday, it was taken on the following Monday to the county seat of Christian county, and was there approved by the county superintendent of that county, and filed in the county court. Miss Griffin's term of office expired on that day, and it is now insisted that the petition should have been approved by her successor, and that her approval was void. It is conceded that she was in office on the preceding Saturday and regularly approved the petition, and that the petition was presented to her with the view to

its being filed in the Christian county court on the following Monday. It is earnestly insisted that Miss Griffin was not in office at the time the petition was filed in the Christian county court, and that the petition is not sufficient unless it is approved by the county superintendent in office at the time it is filed in the county court. The law takes no cognizance of fractions of a day. Miss Griffin began her term of office on the first Monday in January, 1902. Her term expired on the first Monday in January, 1906. She was the county school superintendent on that day until her successor qualified and entered upon the discharge of his duties. She was in office until her successor took the office. Her acts on that day are valid. She was in office on that day; and, as the law takes no notice of fractions of a day, the petition filed in the Christian county court was approved by the superintendent of schools in Todd county. If a school superintendent should approve a petition in a case like this, and should suddenly die before the petition was filed in the county court, if an unreasonable time had not elapsed, it would not be necessary to wait until his successor qualified, and have him to approve the petition before it was filed in the county court. The expiration of the term by time has no greater effect than its termination by death. When the petition is in good faith approved by the superintendent, then in office, and the petition is thereafter in the usual course of business promptly filed, the statute is complied with.

4. When the petition was filed in the Christian county court, it gave the boundary so as to include Joe Mosely, and excluded Miss Kate Hancock. After the petition was filed and at the February term of the court by leave of the court it was so amended as to

include Miss Hancock, and exclude Mosely. The reason that this was done apparently was that there had been a mistake of the draughtsman in writing out the boundary by using the words "included" and "excluded" after the names above referred to; for the judgment in the Todd county court, where there was no amendment of the petition, is the same as in the Christian county court, after the petition had been thus amended. It is insisted that there was no authority of law for the amendment of the petition in the Christian county court, and the case of Waring v. Bertram, 75 S. W. 222, 25 Ky. Law Rep. 307, is relied on. But in that case material alterations were fraudulently made in the petition. Here the correction was made on the motion of the petitioners, and by leave of the county court. The correction was entirely immaterial. It will be observed that the statute does not require the county court to fix the boundary of the proposed graded school district from the petition, but he may fix it "as agreed on by the county judge and the petitioners." The purpose of the statute evidently is to allow the county judge to correct mistakes, and to leave out or include persons on the edge of the boundary as the interest of the schools may require. So, if the petition had remained as it was originally filed, and the correction had not been made at all, the county court would have been authorized to enter the judgment that was entered. The amendment of the petition therefore in no wise affected any right of the parties, or invalidated the judgment. The statute must be substantially complied with, but a substantial compliance is all that is required.

Judgment affirmed.