## Conrad, et al. v. Poole, et al.

(Decided May 23, 1919.)

## Appeal from Bracken Circuit Court.

1. Schools and School Districts—Graded Common Schools.—The requirement in section 4464 of the statutes that the board of education shall approve the petition for the establishment of a graded school is mandatory, and an order of the county judge calling an election to establish the school without such approval is void.

2. Schools and School Districts—Graded Common Schools.—The approval by the county board of education as required by the statute is not confined to an approval of the proposition to establish the district, but also includes its approval of the boundaries of the district.

3. Schools and School Districts—Graded Common Schools.—The board of education after having given its approval has the right, in the exercise of a sound discretion—and especially if it did so through mistake—to withdraw such approval at any time before final action taken on the petition by the county judge.

4. Schools and School Districts—Graded Common Schools.—If after having approved the petition the county board of education should for any legal reason withdraw its approval of either the proposition to establish the school or of the boundaries of the proposed district before final action by the county judge, the latter would be without jurisdiction to act upon the petition, and an order made by him ignoring such withdrawal and calling the election is void.

M. HARGETT and T. W. CUMMINS for appellants.

B. S. GRANNIS, H. G. WILLIS and BAXTER HARRISON for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

This suit calls in question the validity of an order made by the Bracken county judge at a regular term of the county court for that county, on May 13, 1918, directing the holding of an election for the purpose of establishing a graded school as provided in section 4464 of the 1915 edition of Carroll's Kentucky Statutes. The election was held in the territory described in the petition and in the order of court, resulting in a majority of the votes being cast in favor of establishing the school and the levying of an *ad valorem* tax, as submitted in the order, of fifty cents upon each one hundred dollars' worth of assessed property, and a poll tax of $1.50. At

the same time trustees were elected for the district, which was to be designated as "Brooksville Graded School District No. 20." The boundary included the town of Brooksville and territory from contiguous school districts numbers 11, 19 and 26. The plaintiffs and appellants are residents, taxpayers and patrons of the schools in the last three districts named, and some of them reside within the proposed graded school district. Claiming that the order of the county judge and the election held thereunder were void, they filed this suit against the appellees, individually and as trustees of the proposed graded school, seeking to enjoin them from establishing or organizing the school and from levying either an *ad valorem* or poll tax therein, upon the ground that the order calling the election was null and void. The foundation for such claim is that the county board of education for Bracken county, after approving the proposition to establish the graded school on the petition filed for that purpose, and before the county judge acted upon it, rescinded such approval, which fact was brought to the knowledge of the county judge before acting on the petition, and that by reason thereof the county judge was without jurisdiction to make the order. The court below, upon submission of the cause, refused the prayer of the petition and dismissed it, and complaining of that judgment the plaintiffs prosecute this appeal.

The facts with reference to the point raised are that the petition when filed with the county judge, which was upon the regular county court day in April, 1918, complied in all respects with the provision of the section of the statute referred to. It had the requisite percentage of petitioners, contained a description of the boundary of the proposed district, with the site of the proposed school house definitely stated. It was approved by the county board of education and the county superintendent of common schools. On May 11, 1918, two days before the next regular term of the county court at which the order was made, the county board of education met and the following proceedings were had and entered upon its records:

"Members present: Morma Wood, Orvill McDowell, Geo. B. Moneyhon, Geo. F. Meyer and Nannie Hancock.

"Mr. Moneyhon made the following motion: That the proposed graded boundary of Brooksville be the same as the old graded boundary with the addition of the

parts of Locust creek subdistrict No. 47 not included in the Chatham and Hillsdale boundaries and that the former action of the board in approving the boundary be rescinded. Motion carried. Votes as follows: Geo. F. Meyer, yes; Geo. B. Moneyhon, yes; Morma Wood, yes; Orville McDowell, no. Nannie Hancock, Chm. Morma Wood, secy.''

On the following Monday, May 13, 1918, the appellants, with others, appeared before the county judge, and protested against his ordering the election or taking any steps looking to the establishment of the graded school because of a number of grounds then urged, among which was the order of the county board of education rescinding its approval, and with the written protest they filed a duly certified copy of the rescinding order made by the board. The objections contained in the protest were overruled by the county judge, resulting in him entering the order as above stated.

So, the question is, do these facts manifest a case entitling plaintiffs to the relief sought? The circuit court was of the opinion that they did not, and we are called upon by this appeal to review its judgment in so holding. Prior to the amendment of the section of the statute under consideration, by act of 1914, it was required that the petition to create a graded school district be approved ''by a majority of the trustees of any common school district included wholly or partly within the boundary of said proposed graded common school district,'' as well as by the county superintendent of common schools. And in the cases of Mullins v. Andrews, 20 Ky. Law Rep. 20; Waring v. Bertrum, 25 Ky. Law Rep. 307; Board of Education v. Trustees, &c., 30 Ky. Law Rep. 839; Ping v. Keith, 150 Ky. 452, and Haynes v. Strunk, 156 Ky. 18, it was held that such requirements were mandatory, and that unless the petition was approved by such trustees, the county judge was without jurisdiction to entertain the petition or to make any order with reference to the creation of the proposed district, and that if he did so without the approval of the required number of trustees, his action in the premises would be void. The amendment of 1914, in so far as it applies to the preliminary steps looking to the creation of the district, substituted for the approval by the trustees (as theretofore required) the approval of the county board of education, and clearly if it was man-

datory for the trustees mentioned to approve the petition, it is likewise mandatory that its approval by the one so substituted in the amendment (the county board of education) be made. Indeed this is admitted by counsel for both plaintiffs and defendants.

It is insisted (as was held by the court below) that the county board of education having given its approval once, and having endorsed it on the petition, it could not thereafter withdraw such approval or rescind it, even though such action was taken before the county judge acted on the petition, and the determination of the case depends upon whether the board could, under the circumstances, legally withdraw its approval. The direct question, so far as our investigation reveals, has not been determined by this court, but in the cases of Simpson v. Comlth., 30 Ky. Law Rep. 132; O'Neil v. Minary, 125 Ky. 571; Davis v. Henderson, 127 Ky. 41, and Barton v. Edwards, 143 Ky. 713, it was held that petitioners asking for a local option election might withdraw their names at any time before action taken on the petition, and that if enough of them did so to reduce the petitioners below the requisite number authorizing such an election, the county judge would be without authority to call it. The prescribed procedure for calling local option elections and for establishing graded school districts are very similar. Both are begun by filing a petition with the county judge signed by the specified number of petitioners, which petition must lie over until the next regular term of the court, during which time the members of the public who are to be affected by the election may look into the proposition and take such action as they may see proper either for or against it. In either case the filing of the petition is but the initial step toward the accomplishment of the end sought, and if in the one case a petitioner may withdraw his name before final action taken, we see no reason why the same rule would not apply in the other case. Indeed it is practically conceded that the cases are so analogous that the doctrine announced in the above cases dealing with local option elections would apply in school elections.

Conceding, then, the right of a petitioner for the establishment of a graded school to withdraw his name from the petition at any time within the interim between the filing of it and the final action of the court, does that right exist as to any other officer or agency whose sig-

nature to the petition is mandatorily required by the statute? In this connection counsel for defendants insist that the ground upon which the petitioner may withdraw his name, as held in the cases referred to, is that it is his petition, and the proceeding is one in the nature of a suit inaugurated by him and over which he has control until final judgment, during which time he may withdraw at his pleasure, and that in elections of the character now under consideration neither the board of education nor the county superintendent of common schools occupy any such relation toward the petition or proceeding; that they have no control over either, and are not parties thereto in the sense that would permit them to withdraw their approval. We are not inclined to take this narrow view of the statue. In cases like this the approval of the petition by the board of education, as well as by the superintendent of common schools, is required because each of them has a general supervision over the public schools of the county and is presumed to look after and protect the interest of both the patrons and pupils of the schools and neither of them to act or consent to any action that would, upon the whole, work a detriment to or in any wise impair the efficiency of the schools of the county. In other words, they in a way represent the interest of those who are neither petitioners nor included in the boundaries of the proposed district, and when they give their approval, as the statute directs, they become parties to the proceeding for the purposes for which such requirement is made and have the right to take such action as their sound discretion may dictate, looking to the performance of their duties in protecting the interest of the schools in general. Hence, if before final action they conclude that the interest of all parties to be affected demand that the proposed district as described should not be established, they would not only have the right to manifest their conclusions to the court, by way of withdrawing their approval, but it would be their duty to do so.

Whether such action on their part could be arbitrarily taken, we need not decide, for it is quite conclusively shown in this case that one of the members of the board was honestly mistaken as to the boundaries of the proposed district at the time he voted to approve the petition, which mistake he discovered before final action was taken on the petition and before the rescinding order was made by the board of which he was a member; and it

was because of this fact that the meeting of the board on May 11, 1918, was held, at which time the rescinding order was made.

But it is insisted that the board of education, by its rescinding order of May 11, 1918, withdrew its approval of the *boundaries* only of the proposed district and did not rescind its approval of the proposition to *establish* the district and that it is required by the statute to approve only "the proposition to establish any graded common school district, as provided for in this section" (4464), and that the board is not required to give its approval to the boundaries of the proposed district. Again, this construction calls for too narrow a construction of the statute. Clearly, the proposition to establish a graded school district necessarily includes boundaries, since there could be no school district without boundaries. The approval which the statute requires of the board is not confined to approving the *proposition* to establish a graded school, but it must approve the proposition to establish a graded school *district,* which can not exist without boundaries. Furthermore, the district must be such "as provided for in this section," and the one provided for in the section is required to have boundaries fixed, "as agreed on by the county judge and the petitioners." If is therefore such a district that the statute requires its establishment to be approved by the board of education. To hold otherwise would allow the county judge when taking final action upon the petition (theretofore approved by the board) to change altogether the character of district which had been approved and make it an entirely different one from that which the board had approved. This would not only vest arbitrary power in the county judge, but would ignore the purpose which the statute had in view in requiring the approval of the board. We therefore conclude that the statute requires the board of education to approve not only the proposition to establish the school, but also to establish it within a particularly described territory.

We are fortified in this conclusion by this court's opinion in the case of Waring v. Bertram, *supra.* In that case the boundaries of the proposed district were materially changed after the approval of the petition by the trustees, as was then required by the statute, and this court held that "the alteration was material and important and invalidated the petition." This is tanta-

mount to holding that the trustees whose approval was then required not only approved the proposition to establish the school, but also the boundaries of the proposed district, and the same conclusion in that case that the trustees not only approved the proposition but also the boundary of the district, would hold good in this case as to the approval of the county board of education.

There is nothing in the case of Stuart v. Petrie, 138 Ky. 514, militating against this proposition. There it was clearly shown that in describing the district one farm was included and another, through the same error, excluded. In other words, in the description the words "include" and "exclude" were erroneously applied to those two farms and the court held that such a mistake could be corrected after the petition had been filed, saying: "The correction was entirely immaterial. . . . The purpose of the statute evidently is to allow the county judge to correct mistakes and to leave out or include persons on the edge of the boundary as the interest of the schools may require."

We are not at liberty to take into consideration or to have our judgment influenced by any alleged motives prompting the plaintiffs in this case. Our duty is ended when we have construed the law as we understand it, and having done that, it results that the court was in error in dismissing the petition, and its judgment in doing so is therefore reversed for proceedings consistent with this opinion.