## Hopkins, et al. v. Dickens, et al., Trustees.

(Decided June 1, 1920.)

### Appeal from Clinton Circuit Court.

1. Schools and School Districts—Graded Common School Districts— Petition.—Under section 4464, Kentucky Statutes, a petition for the establishment of a graded common school district, in order to give the county court jurisdiction to fix the boundaries and order an election, is not required to be signed by twenty-five per centum of the voters, who are taxpayers, in any magisterial district, or town of the fifth or sixth class, but, it must be signed by twenty-five per centum of the legal voters, who are taxpayers, within the proposed school district.

2. Schools and School Districts—Graded Common School Districts— Petition.—A petition under section 4464, Kentucky Statutes, may be made of several petitions, if identical, and if the signers to all of them, together, are equal to twenty-five per centum of the legal voters, who are taxpayers, within the proposed graded common school district, the requirements of the statute are satisfied.

3. Schools and School Districts—Graded Common Schools—Petition.—Under section 4464, Kentucky Statutes, the approval of the board of education in writing upon the petition, is necessary to authorize the county court to fix the boundaries of the proposed graded common school district, and to order an election held, therein, but, in making and endorsing such approval, the same formalities are not required, as in making contracts and executing ordinary legal documents, but, it is the intellectual approval of the board that is required, and where such approval is made by the board acting as such and the endorsement of the approval

is made in such form as to show, that the approval was had, the statute is satisfied.

BERTRAM & BERTRAM for appellants.

DUNCAN & BELL and J. G. SMITH for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

This appeal involves the validity of a proceeding which was instituted and terminated in the year, 1919, under the provisions of section 4464, Kentucky Statutes, to establish a graded common school district which includes within its boundaries the town of Albany, which is of the sixth class, and a certain portion of the adjacent territory, but all of the territory included in the proposed graded common school district is situated within the bounds of the same justice's district. The pleadings admit that the election held within the proposed graded common school district by the legal voters thereof, to determine whether they would vote an annual tax upon the property and polls of white persons and corporations within the district for the purpose of maintaining a graded common school and for the erection, purchasing or repairing of suitable buildings therefor, if necessary, and for the selection of trustees, was held on April 19, 1919, and resulted in a majority in favor of the imposition of the tax and the establishment of the district. Thereafter, another election was held in the district upon the proposition whether or not the trustees should be authorized to issue bonds of the district in an amount not exceeding the limit provided by sections 157 and 158 of the present Constitution of this state, for the purpose of providing suitable grounds, school buildings, furnishings and apparatus for the district, and that at such election two-thirds of the voters voting at the election voted in favor of the issue of the bonds. The latter election, as we presume, was held under the provisions of section 4481, Kentucky Statutes, and in accordance with the requirements of that statute. At least there is no complaint made of any irregularity touching that election. The appellants, who were the plaintiffs below, however, assail the validity of both elections upon the grounds that the district was not established in accordance with the law and that the county court had not jurisdiction of the subject matter when it entered its order defining the boundary of the district

and directing the sheriff to open a poll and hold an election in the district as provided in section 4464, *supra*. The appellants alleging that both of the elections were void, and that the trustees or pretended trustees, of the district were proceeding to levy and collect taxes as though the establishment of the district was valid, and sought to have them restrained from any further levies or collection of taxes upon the property or polls of the district and to declare the entire proceedings null and void. A statement of facts was agreed upon by the parties to the following effect: (1) That the proposed graded common school district is within the boundaries of the 1st justice's district of Clinton county and that the boundaries of the school district include the whole of the town of Albany, which is a town of the sixth class. (2) That two-thirds of the territory included in the proposed graded common school district is without the corporate limits of the town of Albany. (3) That less than twenty-five per centum of the legal voters and taxpayers residing in the 1st justice's district subscribed the petition asking for the establishment of a graded common school district, but that more than twenty-five per centum of the legal voters and taxpayers, within the boundary of the proposed graded common school district, subscribed the petition asking for the establishment of the district.

Upon the record made the cause was submitted and the court adjudged that the plaintiffs, who were voters and taxpayers within the proposed graded common school district, had failed to manifest any right to the relief sought, and dismissed the petition, and furthermore adjudged that the bonds proposed to be issued were valid obligations of the district and that in the levying and collection of the taxes that the trustees in the district were within their authority. The plaintiffs have appealed from that judgment, and insist that the judgment of the circuit court was erroneous in that the county court, when it made the order fixing the boundary of the district and ordered the sheriff to hold an election as provided by section 4464, *supra*, was without jurisdiction to do so, and hence, that all the proceedings thereafter were invalid. The jurisdiction exercised by the county court is assailed upon three grounds: (1) The petition, upon which the board of education and the county superintendent of schools endorsed their ap-

proval, was subscribed by only three petitioners, which was admittedly an insufficient number to give the court jurisdiction of the subject matter. (2) The county board of education did not endorse its approval of the establishment of the district and its boundaries upon the petition in writing. (3) The petition upon which the court acted was not subscribed by twenty-five per centum of the legal voters, who were taxpayers in the justice's district, within the boundaries of which the graded common school district was proposed to be established.

(a)   The determination of the merits of the third ground upon which the jurisdiction of the county court is denied, depends upon the construction to be placed and the interpretation made of section 4464, *supra*. The section in part reads as follows: "It shall be the duty of the county judge in each county of this Commonwealth, upon a written petition signed by at least twenty-five per cent of legal voters who are taxpayers in the justice's district, town or city of the fifth or sixth class in his county to make an order on his order book, at the next regular term of his court after he receives said petition, fixing the boundary of any proposed graded common school district, as agreed on by the county judge and the petitioners, and directing the sheriff or other officers, whose duty it may be to hold the election, to open a poll in said proposed graded common school district, at the next regular state, town or city election to be held therein, or on any other day fixed by said judge in said order, not in either case earlier than forty days from the date of said order, for the purpose of taking the sense of the legal white voters in said proposed graded common school district upon the proposition whether or not they will vote an annual tax, in any sum named in said order, not exceeding fifty cents on each one hundred dollars of property assessed in said proposed graded common school district, town or city, belonging to said white voters or corporations, or a poll tax in any sum named in said order not exceeding one dollar and fifty cents per capita on each white male inhabitant over twenty-one years of age residing in said proposed graded common school district, or both an *ad valorem* and a poll tax, if so stated in the order, for the purpose of maintaining a graded common school district, and for erecting, purchasing or repairing suitable buildings therefor if necessary, . . ." A proviso, in the section is to the following effect: "Provided, that the

proposition to establish any graded common school, as provided in this section, . . . that no point on the boundary of any proposed graded common school district be more than two and one-half miles from the site of the school building, etc., . . . ''

It must necessarily be conceded, that the county court is without authority to fix the boundaries of a proposed graded common school district, or to order an election held therein, as provided, in the statute, *supra*, until the county judge shall have received a petition signed by the number of persons and with the qualifications required. The qualifications prescribed for the persons, who sign the petition, are, that they must be legal voters, and also, taxpayers, in a justice's district, or in a town or city of the fifth or sixth class, in the county. The number of the signers must be "twenty-five per cent of the legal voters, who are taxpayers, etc." and the point about which the contention here arises, is whether they must constitute twenty-five per centum of the legal voters, who are taxpayers in the proposed graded common school district, or whether they must be twenty-five per cent of all the legal voters, who are taxpayers in the justice's district, or town, in which the district is proposed to be established. If the statute requires the signers of the petition to amount in number to twenty-five per centum of the legal voters, who are taxpayers, in the proposed district, it is conceded, that the petition, in the instant case, was amply sufficient. If it requires the signatures of twenty-five per centum of the legal voters, who are taxpayers, in the town of Albany, or in the magisterial district, within the boundaries of which, the proposed district is situated, the petition was not sufficiently signed, and the county court was without jurisdiction to order the election, or to do anything, except to deny the application. To interpret the statute, it must be ascertained and determined, what the legislature meant and intended, touching the requirement, in issue, as the intention of the legislature is what statute law is. Com v. International Harvester Co., 131 Ky. 551; Maysville, etc., R. R. Co. v. Herrick, 13 Bush 122; Bailey v. Com., 11 Bush 688. Of course, if the language of a statute is plain and unambiguous, and only one meaning can be fairly deduced from it, there is nothing for the courts to do, but to give it such meaning, and there is no room for any judicial construction. Gains v. Gains, 2 A. K. M. 190; Adams Express Co. v. Ky., 238 U. S. 190; Deposit Bank

v. Daviess Co., 102 Ky. 174. If, however, there is ambiguity and uncertainty of the legislative meaning, from the literal meaning of the language, or other reason, the legislative intendment may be ascertained from a consideration of all the provisions of the act, together; as well as the objects intended to be accomplished by it; the occasion of its enactment; other existing legislation upon the same subject, at the time of the enactment; the legislative policy and previous legislation upon the subject, and the result, if a construction contended for is upheld, and from all these sources, if necessary, the true legislative intention may be gathered, and any construction which is contrary to the obvious intention of the legislature, or which will lead to an absurdity, rejected.

A well known rule of construction of an ambiguous statute is, that when the intention of the legislature is obvious, but, the language used, if given its literal meaning, will defeat the intention, the real purpose of the legislature should be allowed to prevail over the literal import of the words. Brown v. Thompson, 14 Bush 538; Lauferman v. Vanzile, 150 Ky. 171. Hence, the courts have often substituted the word "and" for "or," and "or" for "of," and have disregarded words, when the context showed that the use of the word employed, was a manifest error or inadvertence.

It will be observed, that the language of the statute, in question is, "upon a written petition signed by at least twenty-five per cent of the legal voters, who are taxpayers in the justice's district, town or city of the fifth or sixth class in his county, etc." This language, if allowed its literal signification would imply, that the legislature was under the impression that only one justice's district, or only one town of the fifth or sixth class, was in a county, and it is manifest at once, that the article "the" preceding the words "justice's district" was inadvertently used for the article "a." Substituting the article "a" for the article "the," it at once becomes apparent, that the intention of the makers of the statute, in the use of the words "legal voters, who are taxpayers in a justice's district, town or city of the fifth or sixth class, in his county," was not to perscribe a unit beyond the boundaries of which a proposed graded common school district should not go, or that the voters in such a unit should control the establishment of such a district, but the purpose was to prescribe a qualification for the petitioners—that is, in addition to be-

ing a legal voter, and a taxpayer, he must reside in a justice's district, or in a town of the fifth or sixth class. This construction is fortified by the fact, that, at the legislative session of 1916, when section 4464, *supra,* was amended, and re-enacted, in its present form, section 4468a-3 was, also, enacted and which provides a method different from that provided by section 4464, *supra,* for the establishment of graded common schools in cities of the first, second, third and fourth classes. The language above quoted from section 4464, *supra,* has been in such statute in its present form since its amendment, in 1914, and both before and since that time, its provisions by reason of other existing legislation have not applied to cities of the first, second, third and fourth classes. Bailey v. Bigley, 106 Ky. 725; Trustees v. Stone, 142 Ky. 715; Reed v. Smith, 32 R. 716. The only voters and taxpayers, except those residing in cities of the first four classes, are those who reside in justices' districts, in the county, and in cities of the fifth and sixth classes, and this statute not applying to citizens of cities of the first four classes, it was necessary to refer to the ones to whom the latter statute applied, in that statute, as persons who were legal voters and taxpayers, and therefore residents in a justice's district, or in a town of the fifth or sixth class. A reference to other provisions of section 4464, *supra,* shows indisputably, that it was not the intention of the statute, that the boundaries of a graded common school district should be confined, within the limits of any one justice's district, or a town of the fifth or sixth class, exclusive of territory without a justice's district since the limits provided for by the act, for such a school district was not the boundary line of a magisterial district, but, it might extend to the distance of two and one half miles from the site of the school building proposed for the district. The boundaries of the graded common school district are subjects of agreement between the county judge and the petitioners, with the approval of the board of education and the county superintendent of schools. There is no provision of the statutes, which limits a graded common school district to the boundaries of a magisterial district, or of a town of the fifth or sixth class, and the uniform construction, which has been given to section 4464, *supra,* by the officers and patrons of such schools, and in a number of cases assumed by this court, has been, that, a graded common school district may be es-

tablished, which includes towns of the fifth or sixth classes, and, also, adjoining territory, in one or more magisterial districts, beyond the limits of the town. When the election is held to determine, whether the proposed district shall be established, the only persons permitted to vote at such election are, if a white district, not the voters, within the justice's district or town, in which the proposed school district, or a part of it is situated, but the legal white voters residing within the boundaries of the proposed district. After the establishment of the school district, it is only the residents of it who are required to bear the taxation necessary to maintain its buildings and school, and to control the district. Hence, we conclude, that it is twenty-five per centum of the legal voters, who are taxpayers, within the boundaries of the proposed graded common school district, only, who must be signers of the petition, to give the county court jurisdiction of the matter. A different conclusion, as to the persons necessary to be signers of the petition, would lead to the following results. If the number of voters in a justice's district, or a town of the fifth or sixth class, were held to be units by which to determine, when a sufficient number of signers was secured to give the county court jurisdiction, the applicants would have to first elect where a town of the fifth or sixth class was situated, whether the proposed school district should be in the town or should include territory outside of it, and if the town was selected as the unit, then to secure the signatures of twenty-five per centum of the voters and taxpayers of the town would be necessary to the petition, whether they were all included in the proposed school district or not. If the justice's district was selected as the unit, then it would take twenty-five per centum of the voters and taxpayers within the magisterial district although seventy-five per centum of them, might reside without the limits of the proposed school district, and if the latter included portions of several magisterial districts, as it might, then it would require the signatures of twenty-five per centum of the voters and taxpayers of each of the magisterial districts, to give the court jurisdiction, although a very small per centum of all, would be in the proposed school district, or would be permitted to vote on the question of its establishment, or would ever have any interest in or control of it. Twenty-five per centum of the voters and taxpayers in a magisterial

district, could, under such a construction of the statute, require an election to be held for the establishment of a school district, in a portion of the magisterial district, wherein no one of the signers resided or was a taxpayer, and all the voters and taxpayers within the proposed school district be opposed to it. Applying to the words "twenty-five per cent of the legal voters, who are taxpayers in the justice's district, etc.," without reference to other provisions of the statute, their literal import would make it necessary to give the county court jurisdiction of the subject, to include in the computation to be made to determine when twenty-five per centum of the legal voters and taxpayers had signed the petition, the persons of color, as well as the white voters, which, in the view of all the legislation touching schools, no one would suppose, that the legislature contemplated. In view of the foregoing it seems very clear, that the legislature intended by the statute, that to give the county court jurisdiction of the subject, a petition signed by twenty-five per centum of the legal white voters, who are taxpayers within the boundary of the proposed graded common school district, only, was necessary, where a white graded common school is desired, as in the present instance.

The other two contentions of appellants will be considered together. Four petitions, which were exact copies of each other, were circulated and more than twenty-five per centum of the legal white voters, who were taxpayers, and who resided within the proposed school district signed, one or the other of the petitions, but, neither of the petitions, alone, had a sufficient number of signers. These petitions were treated, as one petition, and were together presented to the board of education for its endorsement, and to the county judge. The statute requires, that twenty-five per centum of the legal voters, who are taxpayers, within the proposed school district, must petition for its establishment, before the costs and trouble of an election are resorted to, and the names of the petitioners, upon whose request the county court bases its actions, must appear, that the people of the proposed district may determine, whether they are legal voters and taxpayers, within the district, and two or more petitions identical in terms, and together signed by the requisite number satisfies the requirements of the statute. Under the local option law which required a petition subscribed by twenty-five per

centum of the voters, in a district to be affected to be presented to the county judge, requesting the holding of an election upon the subject of the sale of spirituous liquors, in order to authorize the county judge to order the election to be held, it was held, that two or more petitions, which together, were subscribed by the requisite number of persons, satisfied the requirements of the statute. The same reasons would satisfy the statute, in ordering an election for the establishment of a graded common school district. Smith v. Patton, 103 Ky. 444; Tousey v. DeHuy, 23 K. L. R. 458. The statute requires the petition to be approved in writing by the county board of education and the county superintendent of schools, before the county judge is authorized to act upon it. That such approval must exist to give the county court jurisdiction, there is no doubt. Under a former statute, when the approval of a school trustee, whose district was affected by the proposed creation of a graded common school district, was necessary, it was held, that the failure of the applicants to secure such approval was fatal to the proceedings, and the same has been held with reference to the approval of the county board of education under the present statute. Kuttawa Common School District v. Trustee, etc., 30 K. L. R. 839; Mullins v. Andrews, 20 K. L. R. 20; Conrad v. Poole, 184 Ky. 348.

In the instant case, the board of education at a meeting held for the purpose, adopted a resolution approving the creation of the proposed graded common school district and the boundaries of it, which was duly entered upon its records, and was subscribed by its chairman and secretary, but, at the same time the approval, which it placed in writing, upon the petition, was written upon one of the petitions only and was signed by each of the members of the board, with his name, followed by a statement, that he was a member by reason of being the chairman of a designated educational division. It is insisted, that the board of education, being a corporation, that it could act only as such, and that the approval endorsed upon the petition was not the act of the board, but the separate act of each of its individual members, and that the approval should have been subscribed by the board by its chairman and attested by its secretary. True the board is a corporation and so declared by statute, as the trustees of a school district are a corporation, and must act as such, or else its acts are ineffectual. The

board to act must have present a quorum of its members, and all must have had notice or opportunity to be present. Shore v. Langston, 125 Ky. 816; Scott v. Pendley, 24 K. L. R. 1431; Shepherd v. Gambill, 25 K. L. R. 333; Creech v. Trustees, 31 K. L. R. 379. A distinction must, however, be drawn between the manner required of the board, when transacting its business, touching contracts, and performing its fiscal duties, and such an act as approving the creation of a graded common school district. In the latter instance it is only its intellectual approval, that is required, in order that it may maintain a proper control over the schools and educational interests of the county. In such case, a substantial compliance with the statute satisfies it. In De Haven v. Hardinsburg, etc., 164 Ky. 515, which involved the sufficiency of an endorsement of approval by a school trustee, of the petition for the creation of a graded common school district, this court said: "We are not disposed to hold that the same formalities should attend the approval of such a petition as are held necessary in the execution of ordinary legal documents." The members of the board of education in the instant case, acting as the board, at a meeting held for the purpose, endorsed its approval in writing upon one of the petitions, therein referring to the others, as copies of it, and extending its approval to all, and then each member of the board signed the writing. The superintendent of schools, also, endorsed his approval, at the same time, and thus the written approval was subscribed by not only the chairman and secretary but each member of the board, though the signatures of the chairman and secretary did not purport to be subscribed as such, but, as members of the board, which they were. This was a compliance with the statute, for all the purposes, for which the approval of the board of education is required.

The judgment is therefore affirmed.