**CITY OF LOUISVILLE v. HELMAN et al.**

Court of Appeals of Kentucky.
Dec. 19, 1952.

Gilbert Burnett, Wm. E. Berry, Louisville, for appellant.

Carl K. Helman, N. H. Dosker, Louisville, for appellees.

CULLEN, Commissioner.

In a proceeding under Section 637 of the Civil Code, the City of Louisville, the Municipal Housing Commission of the city (in the capacity of an owner of abutting property), and a taxpayer of the city submitted a controversy concerning the right of the city to expend, for the improvement of part of the carriageway of certain streets, the proceeds of a bond issue voted by the people of the city for the specific purpose of paying for street improvements. The circuit court adjudged that, with respect to certain streets designated in a plan adopted by ordinance, known as the "Barton Plan," the city may use the proceeds of the bond issue to pay for improving such portion of the width of the streets as exceeds 26 feet, it being adjudged that 26 feet constitutes a reasonable width for the improvement of which the abutting property owners shall be assessed.

The city has appealed, and the only question raised is whether the judgment is erroneous by reason of KRS 93.370, which provides that street improvements "shall be made at the exclusive cost of the owners" of abutting property.

The "Barton Plan" is a plan providing primarily for the widening and straightening of major east-west and north-south streets in Louisville, for the accommodation of through or cross-town traffic. Most of the streets affected now have a carriageway 26 feet in width, which is the normal or average width of the improved portion of the streets throughout Louisville. The plan contemplates widening the carriageway to 36 feet, on the steets covered by the plan. In some instances existing streets will merely be widened, while in other instances new construction will be required to eliminate "jogs".

In order to finance the improvements covered by the Barton Plan, the board of aldermen submitted to the voters the question of issuing $5,000,000 in bonds. The question was submitted in this form:

"Shall the City of Louisville incur an indebtedness and issue and sell its bonds therefor in the amount of $5,000,000.00 as provided in Ordinance No. 231, Series 1950, for the purpose of financing a program to facilitate the movement of traffic in the City of Louisville by providing funds to pay all or a part of the cost of the improvement of existing streets in the City of Louisville, including construction, reconstruction and surfacing but excluding maintenance, and including integration of such streets by widening, straightening, extension and connection, and including the procurement of right of way therefor and the establishment of an integrated traffic system thereon * * *."

The bond issue was approved at the November election in 1950, and thereafter the board of aldermen provided for the issuance of $2,000,000 in bonds of the $5,000,000 authorized. Ordinances were adopted for the improvement of some of the streets designated in the Barton Plan. The ordinances provide that the city will pay for

such portion of the improvement as exceeds 26 feet in width, the balance of the cost being assessed against the abutting property. Of course, the theory of the ordinances is that the owners of abutting property should pay the cost of an ordinary street, and the city should pay any additional cost involved in providing a street designed for city-wide, as distinguished from neighborhood, use.

We are required to determine whether the statute stands in the way of carrying out what seems to be a just and fair plan for solving a serious traffic problem of the city.

A well-established rule of statutory construction is that the courts will consider the purpose which the statute is intended to accomplish—the reason and spirit of the statute—the mischief intended to be remedied. Ewing v. Hays, 257 Ky. 259, 77 S.W.2d 946; Harco Corp. v. Martin, 271 Ky. 572, 112 S.W.2d 693; Mann v. Humphrey's Adm'x, 257 Ky. 647, 79 S.W. 2d 17, 96 A.L.R. 584; People's State Bank & Trust Co. v. Wade, 269 Ky. 89, 106 S.W.2d 74; Button v. Hikes, 296 Ky. 163, 176 S.W.2d 112, 150 A.L.R. 779; Grieb v. National Bank of Kentucky's Receiver, 252 Ky. 753, 68 S.W.2d 21.

Another equally well recognized rule is that a statute will not be given a strict literal interpretation, if to do so would lead to an absurdity. Hopkins v. Dickens, 188 Ky. 368, 222 S.W. 101; Adams v. Greene, 182 Ky. 504, 206 S.W. 759; Chilton v. Gividen, Ky., 246 S.W.2d 133; Johnson v. Frankfort & Cincinnati R. R., 303 Ky. 256, 197 S.W.2d 432.

The statute here in question states that street improvements must be made at the "exclusive cost" of the abutting property owners. However, we think it is clear that the legislature, in using the word "exclusive," was concerned only in making sure that city money should not be used by the board of aldermen in paying for street improvements. Certainly, if a large industrial concern should offer to pay the entire cost of paving a street leading towards its plant, no one would argue that this would violate the statute. Likewise,

if one abutting property owner should offer to pay his neighbor's assessment as well as his own, it could not reasonably be contended that the city could not accept the money. The statute was not intended so much to say that the abutting property owners must pay the cost, as to say that the city should not pay any of the cost.

If the statute was designed primarily to prevent the city from paying part of the cost of street improvements, then it is apparent that the statute has the character of a restriction on the board of aldermen with respect to the expenditure of the kind of money that normally would be within the power of the board to expend; in other words, the general fund of the city. The legislature, in effect, has said to the board of aldermen, "You shall not spend any of the general fund of the city for street improvements."

We think the controlling question in this case is whether the money received through the bond issue is the kind of city money that the legislature intended not to be spent for street improvements. Actually, it is not city money in the ordinary sense of the term. It cannot be used for any regular city purpose, but is restricted to use for street improvements. The money does not arise from a tax imposed by the board of aldermen, but from voluntary action on the part of the voters.

Here the taxpayers have voted an obligation against themselves for the sole purpose of improving the streets. There is nothing about the statute to indicate any legislative intent to protect the taxpayers against themselves, as distinguished from protecting them against the board of aldermen. We think it would be an absurd construction of the statute to hold that it prevents the voters of the city from creating a special fund, outside of regular city moneys, for the purpose of making street improvements.

Cities of all classes except the first class have the authority to spend even regular city money for street improvements. KRS 94.297. Therefore, it cannot be said that there is any general public policy in this state against the use of

public money for such purposes. For some reason, the legislature has chosen to place special restrictions on first class cities. However, as hereinbefore indicated, we do not consider those restrictions as extending to the proceeds of a bond issue voted expressly for the purpose of street improvements.

The judgment is affirmed.