115 S.W.3d 343 (2003)
LEXINGTON-FAYETTE URBAN COUNTY HEALTH DEPARTMENT; Lexington-Fayette Urban County Board of Health; John Poundstone, Individually and In His Official Capacity as Commissioner of The Lexington-Fayette Urban County Board of Health; and James Griffin, Individually and In His Official Capacity as Personnel Director of The Lexington-Fayette Urban County Health Department, Appellants,
v.
Robert LLOYD, Appellee.
No. 2002-CA-000758-MR.
Court of Appeals of Kentucky.
September 5, 2003.
*344 Phillip D. Scott, David A. French, Lexington, KY, for Appellants.
Kara Read Marino, Lexington, KY, for Appellee.
Before JOHNSON, KNOPF and McANULTY, Judges.

OPINION
JOHNSON, Judge.
The Lexington-Fayette Urban County Health Department, the Lexington-Fayette Urban County Board of Health, John Poundstone, individually and in his official capacity as Commissioner of the Lexington-Fayette Urban County Board of Health, and James Griffin, individually and in his official capacity as Personnel Director of the Health Department, (collectively, appellants) have appealed from an order entered by the Fayette Circuit Court on March 21, 2002, which granted Robert Lloyd's motion for summary judgment and denied the appellants' cross-motion for summary judgment. Having concluded that the trial court correctly interpreted the applicable statutes, we affirm.
In July 1994 the Health Department hired Robert Lloyd for the position of School Liaison Worker. Lloyd was assigned to work at the Bluegrass-Aspendale Teen Center, an after-school enrichment program for teenagers. On the occasions that Lloyd would transport the Teen Center's clients, he would sometimes use the Health Department's van and at other times he used his personal vehicle. The Health Department gave Lloyd a SuperAmerica credit card to purchase fuel for the van. When Lloyd used his personal vehicle at work, he was reimbursed for this expense.
In February 1995 a Deputy Commissioner at the Health Department noticed that the amount of money spent on gasoline in 1994 far exceeded the amount that had been budgeted. Invoices and receipts which were obtained from SuperAmerica revealed that Lloyd had made purchases of gasoline and merchandise with the SuperAmerica credit card during times that according to his time sheets he had not worked. When Griffin and the Deputy Commissioner asked Lloyd about these purchases, he admitted to buying gasoline for his personal vehicle and snacks for clients with the SuperAmerica credit card, but he claimed that the purchases had been authorized by his supervisor and accounted for when he did not claim mileage reimbursement that was otherwise due him.
On March 8, 1995, Lloyd was suspended from his position for 30 days with pay while the Health Department investigated the matter. It was discovered that Lloyd had made 14 separate personal charges on the Health Department's SuperAmerica credit card from July 1994 through January 1995, at times when his time sheets indicated that he had not worked. Lloyd claimed that he worked hours that were not reflected on his time sheets because he had exceeded the number of hours that the Health Department would allow for overtime and "comp" time.
Under the Health Department's personnel rules, Lloyd was an employee with status and he could only be dismissed from employment for cause. In a letter dated April 7, 1995, the Health Department terminated Lloyd's employment based on its finding of gross misconduct and advised *345 him of his right to appeal his dismissal to the Merit System Council. Lloyd appealed on April 25, 1995, and an evidentiary hearing was held on September 15, 1995. The Merit System Council issued its findings of fact, conclusions of law and ruling on September 29, 1995. The findings of fact in relevant part stated:
3. Mr. Lloyd testified that on occasion he transported clients of the Teen Center in his personal car. The Health Department submitted a written policy concerning the use of personal vehicles that prohibits transporting clients in personal vehicles except in exceptional circumstances. However, there was no evidence that either this specific policy or any other policy was ever given to Mr. Lloyd, and he testified that he was not aware of it.
...
6. Mr. Lloyd testified that on occasion he did not have sufficient cash to buy gas for his personal car and to purchase food items (primarily snacks) for teenagers who were clients of the Teen Center. He testified that he had talked to his supervisor, Mr. Jenkins, about this situation and Mr. Jenkins instructed him to purchase the gas and food items with the SuperAmerica credit card and offset it by claiming fewer miles than he actually drove on his weekly time sheets.
7. Mr. Lloyd submitted to the Council a memorandum signed by Mr. Jenkins which indicates that Mr. Jenkins did authorize Mr. Lloyd to use the SuperAmerica credit card for food purchases and gas purchases for Mr. Lloyd's personal car. The weight of this evidence is diminished by the fact that Mr. Jenkins was not available for cross-examination, but nonetheless, in the absence of any evidence to the contrary, it must be found that Mr. Jenkins did, in fact, authorize the purchases in question.
8. Mr. Jenkins approved both the weekly time sheets and the payment of the SuperAmerica credit card account.
9. Following the discovery of these questioned charges by Lora Deck, both Mr. Jenkins and Mr. Lloyd were discharged....
The conclusions of law consisted of the following:
1. Although Mr. Lloyd's transportation of clients in his personal vehicle conflicts with the written policy of the Health Department, this cannot be grounds for his dismissal since there was no showing that he knew of the policy and intentionally disregarded it.
2. The use of a Health Department credit card to purchase gas for a personal vehicle is inherently suspect and contrary to generally accepted methods of cost accounting. Moreover, it conflicts with the system of reimbursement established by the Health Department and utilized by Mr. Lloyd. Nonetheless, the evidence in this case is that the purchases by Mr. Lloyd were authorized by his supervisor, Steven Jenkins, and in the absence of any written policy, the Council cannot find Mr. Lloyd's use of the credit card in these circumstances to be sufficient grounds for dismissal.
In its ruling, the Merit System Council refused to uphold Lloyd's dismissal and stated that he should be reinstated to his former position. The Merit System Council called for the Health Department and Lloyd to attempt to reach an agreement on *346 the terms of his reinstatement, including the amount of his back pay.
On October 10, 1995, the Health Department filed a motion for reconsideration with the Merit System Council, which was denied on November 15, 1995. In a letter dated December 8, 1995, appellants' counsel notified Lloyd's counsel that the Health Department had refused to reinstate Lloyd to his former position because it had good cause to terminate his employment and his position had been eliminated. On December 15, 1995, Lloyd filed a request with the Merit System Council for a supplemental hearing to determine the terms of his reinstatement and back pay. In an order dated March 1, 1996, the Merit System Council denied Lloyd's motion for a supplemental hearing and attorney's fees, but reiterated that Lloyd was entitled to reinstatement to his former position or a position of like status and pay. The Merit System Council further stated that if Lloyd "is not reinstated with full back pay, his recourse would be to file an action in a court of appropriate jurisdiction to enforce the orders of the Merit Council."
Lloyd filed a complaint in Fayette Circuit Court on August 12, 1996. Lloyd sought, inter alia, reinstatement, back pay, and injunctive relief, specifically alleging that "[t]he rulings and orders of the Merit Council are binding upon the [appellants] pursuant to the statutory mandate creating the Health Department's Merit System." On August 30, 1996, the appellants filed a motion to dismiss, alleging that the Merit System Council's recommendations were not binding on the Health Department and that Lloyd's proper recourse was an administrative appeal to the Board of Health pursuant to KRS [1] 212.635(2).[2] The appellants claimed that Lloyd had "failed to utilize the statutory procedure for challenging his alleged deprivation of a protected interest."
In an order entered on November 21, 1996, the circuit court held the appellants' motion to dismiss in abeyance and gave Lloyd 30 days in which to perfect his administrative appeal to the Board of Health. Lloyd filed the administrative appeal as ordered by the circuit court, but he specifically noted his objection to the procedure. In a memorandum dated April 11, 1997, the Board of Health "affirmed" Commissioner Poundstone's decision "to reject the recommendations and rulings of the Merit Council and thereby refuse to reinstate former employee Robert Lloyd." On March 10, 1998, Lloyd filed a motion for disposition with the circuit court requesting that it rule on the appellants' motion to dismiss, which had been held in abeyance. In an order and opinion entered on June 30, 1999, the circuit court denied the appellants' motion to dismiss and denied Lloyd's motion for a temporary injunction.
Lloyd filed a motion for summary judgment on February 6, 2002, and the appellants filed a cross-motion for summary judgment on February 19, 2002. In an order entered on March 21, 2002, the circuit court granted Lloyd's motion for summary judgment based on its determination "that under Kentucky law the Council's decision was binding on the Health Department." The circuit court further concluded that the Health Department should have appealed to the circuit court if it wished to have the Merit System Council's decision reviewed, and denied the appellants' *347 cross-motion for summary judgment. This appeal followed.
Since the construction and application of statutes is a matter of law, our standard of review is de novo.[3] A fundamental rule in the interpretation and construction of statutes is that the court should "ascertain and give effect to the intention of the Legislature and that intention must be determined from the language of the statute itself if possible." [4] When a statute is ambiguous and its meaning uncertain, the legislative intent should be ascertained by considering the whole statute and the purpose intended to be accomplished.[5] In construing the statute, the court must consider the policy and the purpose of the statute, the reason and the spirit of the statute, and the mischief intended to be remedied.[6] The court's interpretation of the statute should produce a practical and reasonable result.[7]
The appellants claim that the applicable statutes give the Board of Health the final authority over employee discipline and termination and that the trial court erred by ruling that the Merit System Council's decision was binding on the Health Department. The appellants state that "[w]ithin the Health Department's personnel administration program, the Board of Health alonenot the Merit Councilhas the statutory and policy authority to make binding personnel decisions." The appellants further contend that the Merit System Rules adopted by the Merit System Council provided that the duties of the Merit System Council included the duty "to make recommendations to the Department relative to the internal personnel practices to assure conformity with these rules."
In response, Lloyd argues that KRS 212.636(2) requires the Board of Health to establish a merit system "whereby the rules and regulations of such system shall not be less stringent than those of the merit system of the Cabinet for Human Services." Lloyd contends that in order for this Court to interpret the personnel rules and procedures that applied to him, we must necessarily look for guidance to the personnel rules and procedures that pertained to the Cabinet. Lloyd then points out that a classified employee of the Cabinet can only be dismissed for cause[8] and that an employee of the Cabinet may appeal his dismissal to the Personnel Board.[9] Thus, Lloyd argues that in order for the Board of Health's merit system to provide no less protection to an employee who has been dismissed than the Cabinet provides, an employee of the Board of Health must have the right to appeal his dismissal to a board such as the Merit System Council as opposed to the Board of Health.
*348 We begin our analysis by noting that the Lexington-Fayette Urban County Health Department and Board of Health were created by the Legislature's enactment of KRS 212.627;[10] and the Board of Health's powers are limited to the powers granted to it by the Legislature.[11] While the appellants put great weight on the authorization provided in KRS 212.635(2) for the Board of Health to "hear and decide appeals from rulings, decisions, and actions of the department or commissioner," we hold that the "aggrieved party" referred to in that subsection does not include an employee of the Health Department. While KRS 212.635(2) clearly authorized the Board of Health to hear and to decide appeals from rulings, decisions, and actions of the Health Department or Commissioner upon the request of an aggrieved party, we are convinced that the statute was referring to actions taken by the Health Department to enforce the health laws and not to internal personnel actions of the Health Department, such as Lloyd's dismissal.
Personnel administration is addressed separately at KRS 212.636(2), where the Legislature set forth the board's powers regarding employee recruitment, examination, appointment, promotion, transfer, layoff, removal, discipline, compensation, and welfare. This subsection requires the Board of Health to establish "a system of personnel administration based on merit principles and scientific methods whereby the rules and regulations of such system shall not be less stringent than those of the merit system of the Cabinet for Human Services."[12] KRS 212.636(2) further requires the Board of Health to establish a personnel board and to select the members of that board. "The personnel board shall be responsible for establishing rules and regulations for the purpose of governing the administration of the personnel system."[13] The Board of Health followed this statutory mandate by establishing the Merit System Council, but it now wishes to limit the Council's authority in reviewing an employee's appeal of a disciplinary action *349 to merely an advisory role. This argument must fail because it is inconsistent with the overall statutory scheme which requires that the system of personnel administration not be less stringent than that of the merit system of the Cabinet for Health Services, which includes a personnel board with the authority to reinstate an employee who has been discharged without just cause.[14]
We also note that the appellants recognized the binding authority of the Merit System Council when the Health Department asked the Merit System Council to reconsider its ruling. This begs the question that if the Health Department was of the opinion that the Merit System Council's ruling was merely a recommendation, then why did it bother asking for a reconsideration.[15] In fact, the Health Department took the position before the Merit System Council that under KRS 216.636(2) "[t]he merit system of the Cabinet, in turn, is controlled by KRS Chapter 18A, the Chapter governing the employment of state personnel." The Health Department noted that "[u]nder KRS 18A.095(23)(b),[16] any employee's appeal that is heard by less than the full Personnel Board may be reviewed by the full board before a final order of the board is issued." The Health Department then argued that "[b]ecause the Health Department's merit system rules cannot be less stringent than those of the Cabinet, and because the Cabinet's merit rules provide for review by the full Personnel Board, the Health Department is entitled to reconsideration of the Ruling in this matter by the Full Council."
The Health Department next argued to the Merit System Council that "the Full Council should reconsider the Ruling in this matter because reinstatement and an award of backpay are inappropriate remedies under the facts of this case." The Health Department then cited KRS 18A.095(24)(c)[17] for its request that in the alternative to upholding Lloyd's dismissal, the Merit System Council should rescind the disciplinary action taken against Lloyd "because reinstatement and an award of backpay are inappropriate remedies under the facts of this case."
Thus, during the administrative appeal of this matter, the Health Department for its own purposes conceded that various provisions in Chapter 18A were applicable to its personnel actions under KRS 212.636(2). The appellants cannot be allowed to argue the issue one way before the administrative agency when it suits its purposes and then to take the opposite position before the courts.[18] Furthermore, under the doctrine of contemporaneous construction "where an administrative *350 agency has the responsibility of interpreting a statute that is in some manner ambiguous, the agency is restricted to any long-standing construction of the provisions of the statute it has previously made."[19]
We also find support for our holding in the Merit System Rules, which provided in pertinent part as follows:
An employee with status who has been dismissed for reasons found by the Merit System Council, after hearing the employee's appeal, to be in violation of the Merit System Rules shall be reinstated to his former position or position of like status and pay, without loss of pay for the period of separation. In this case the employee is not required to serve a probationary period [emphasis added].[20]
...
The Council, within fifteen (15) working days after the hearing of any required investigation, shall render its decision to the Department. This decision shall be recorded in the permanent personnel records. The Personnel Director shall, in writing, promptly notify the employees of the decision [emphases added].[21]
These provisions state that if the Merit System Council finds that an employee's dismissal violated the Merit System Rules, the employee "shall be reinstated to his former position or position of like status and pay, without loss of pay for the period of separation[,]" and that after the hearing the Council "shall render its decision to the Department... [and][t]he Personnel Director shall, in writing, promptly notify the employees of the decision." The Merit System Rules use the verb "shall"[22] which is mandatory. The Rules also use the noun "decision" which suggests finality as opposed to a mere recommendation. The Health Department is bound by the Merit System Rules as adopted by the Merit System Council.
Furthermore, there is no language in KRS 212.636 to support the appellants' claim that the Merit System Council's role in hearing an employee's appeal of a disciplinary action is purely advisory. Certainly our Legislature knows how to establish a "citizens' advisory council" as it did at KRS 212.634 "to advise the board, the commissioner, and his staff on matters relating to program, activities, and performance of the department." Every indication from the statutory scheme is that the Legislature intended for the merit system established by the Board of Health to include a board with appellate powers no less stringent than those of the Personnel Board.
Based on the foregoing reasons, the order of the Fayette Circuit Court granting summary judgment to Lloyd is affirmed.
ALL CONCUR.
NOTES
[1] Kentucky Revised Statutes.
[2] KRS 212.635(2) provides: "The board shall hear and decide appeals from rulings, decisions, and actions of the department or commissioner, where the aggrieved party makes a written request to the board within thirty (30) days after the ruling, decision, or action complained of."
[3] Bob Hook Chevrolet Isuzu, Inc. v. Commonwealth, Transportation Cabinet, Ky., 983 S.W.2d 488, 490 (1998).
[4] Moore v. Alsmiller, 289 Ky. 682, 686-87, 160 S.W.2d 10, 12 (1942).
[5] Hopkins v. Dickens, 188 Ky. 368, 372-73, 222 S.W. 101, 104 (1920); Department of Motor Transportation. v. City Bus Co., Ky., 252 S.W.2d 46, 47 (1952).
[6] Barker v. Commonwealth, Ky.App., 32 S.W.3d 515, 516-17 (2000)(citing City of Louisville v. Helman, Ky., 253 S.W.2d 598, 600 (1952)); see also Kentucky Region Eight v. Commonwealth, Ky., 507 S.W.2d 489, 491 (1974).
[7] Brown v. Hoblitzell, Ky., 307 S.W.2d 739 (1956); Walker v. Kentucky Department of Education, Ky.App., 981 S.W.2d 128, 130 (1998).
[8] KRS 18A.095(2).
[9] KRS 18A.095(8)(c); see Wade v. Commonwealth, Department of Treasury, Ky.App., 840 S.W.2d 215 (1992).
[10] KRS 212.627, which became effective on July 1, 1977, provides:

When and after the board and department established under the provisions of KRS 212.626 to 212.639 are organized and except as otherwise provided herein, the board and department shall succeed to and be vested with all of the functions, obligations, powers, duties and privileges now being exercised by the city-county board of health and city-county department of health, and thereupon the citycounty board of health and city-county department of health shall cease to exist and all laws and amendments to any such laws, relating to and governing the city-county board of health and city-county department of health, in conflict with the provisions of KRS 212.626 to 212.639 shall, to the extent of such conflict, stand and be repealed.
Among the powers being exercised by the city-county department of health at the time of the establishment of the Lexington-Fayette County Health Department and Board of Health was the power pursuant to KRS 212.245(6) to "[i]ssue written orders directed to the owner or occupant of any property, or to any person, firm, or corporation whatever, commanding, within the time and manner specified in the order, compliance with applicable public health laws of this state and all regulations of the Cabinet for Health Services or the county board of health." Prior to July 15, 1998, the Cabinet for Health Services was known as the Cabinet for Human Resources.
[11] Lexington-Fayette Urban County Board of Health v. Board of Trustees of University of Kentucky, Ky., 879 S.W.2d 485, 486 (1994).
[12] This language mirrors the language governing state agencies at KRS 18A.010(1), which provides for "a system of personnel administration based on merit principles and scientific methods governing the recruitment, examination, appointment, promotion, transfer, lay-off, removal, discipline, and welfare of its classified employees...."
[13] KRS 212.636(2).
[14] KRS 18A.095(23)(b).
[15] We note that the Health Department sought reconsideration by the "Full Merit Council," but there is no provision in the Merit Rules for a decision by anything other than the "Merit Council." Furthermore, all three orders from the Merit System Council indicated that they were from the "Merit Council" and were signed by the chairman. Thus, we see no other way to view the motion for reconsideration other than as an attempt by the Health Department to convince the Merit System Council to change its decision so the Health Department's dismissal of Lloyd would be upheld.
[16] KRS 18A.095(23)(b), which provided in part that "[a]ny appeal heard by less than the full board shall be reviewed by the full board before a final order of the board is issued ...", was repealed effective July 15, 1996. 1996 Ky.Acts. Ch. 318 § 22.
[17] This provision has been renumbered as KRS 18A.095(23)(c).
[18] Kirkpatrick v. Lawrence, Ky.App., 908 S.W.2d 125, 130 (1995).
[19] GTE v. Revenue Cabinet, Commonwealth of Kentucky, Ky., 889 S.W.2d 788, 792 (1994).
[20] Rule VIII.F.2.
[21] Rule XII.D.3.
[22] Alexander v. S & M Motors, Inc., Ky., 28 S.W.3d 303, 305 (2000)(citing KRS 446.010(20)).